IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MELVIN PEREZ,

    Plaintiff,

v.	CASE NO. 1:11-cv-180-SPM-GRJ

MICHAEL G. SIMPSON, et al,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate in the custody of the Florida Department of Corrections, initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). The case is presently before the Court on Doc. 34, Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed a response in opposition to the motion to dismiss, Doc. 39, and therefore this matter is ripe for review. For the following reasons, the undersigned recommends that the motion to dismiss be granted in part and denied in part.

**I. BACKGROUND**

According to the allegations of the complaint, Plaintiff's claims stem from an August 7, 2008 prison disciplinary conviction for refusing to work while he was incarcerated at Mayo C.I. Plaintiff received 60 days of disciplinary confinement as a result of his disciplinary conviction. Plaintiff alleges that prison officials violated his First and Fourteenth Amendment rights by denying him due process in connection with the

disciplinary hearing, issuing a retaliatory disciplinary report, and threatening him if he filed more grievances.  Plaintiff named as defendants seven employees at Mayo C.I.

Plaintiff alleges that on July 31, 2008 at 8:51 a.m., Sgt. Simpson yelled from the bottom floor of the wing where Plaintiff was housed: "If Lt. Land calls me one more time about a grievance you have filed against me, I'm getting you gassed!  There is 64 other people in here and you want to be the bitch and write everything up."  (Doc. 1.)  Approximately 15 minutes later, Sgt. Simpson came back to Plaintiff's cell door and told Plaintiff's cellmate that he would be moving him that day.  At 11 a.m., Sgt. Simpson came to Plaintiff's cell and asked why Plaintiff filed a grievance against him.  Plaintiff avers that he had filed a grievance against Sgt. Simpson a few days prior regarding threats of reprisal disciplinary reports.  Plaintiff alleges that Sgt. Simpson then said:

> I am tired of Lt. Land calling down here about your grievances.  I hate you.  I have fifteen years left to retire and you are going to be back here for fifteen years.  I will do everything I can to f–k you.  You ain't shit, you have no rights and you are going to get more DR's.  I worked back here for four years and never had a problem and in the last four days I have been called about you f–k ass.  You will see I will write up the officer giving you the grievance forms.

At about 12:27 p.m., Sgt. Simpson pulled out two prisoners from the cell adjacent to Plaintiff's and at that time told another officer, "that is the f–k boy writing all those grievances" and they both came to Plaintiff's cell door and looked at Plaintiff.  At 1:35 p.m., Sgt. Simpson moved Plaintiff's cellmate to an adjacent cell.  At 1:40 p.m., Sgt. Simpson came to Plaintiff's cell door and told him he was going to take him outside to do work–to clean floor railings and doors with a toothbrush and Q-tips.  Sgt. Simpson walked away, saying "you'll get it tomorrow" and never came back to pull Plaintiff to clean.

The following day, August 1, 2008, Plaintiff said he was served with a DR for refusing to work written by Sgt. Simpson.  Plaintiff requested camera evidence, documentary evidence, witnesses, and that the DR hearing be recorded.  Plaintiff wrote a statement in his defense and gave it to Officer Winburn, who served him the DR.  Plaintiff alleges Officer Winburn then said: "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!"

Plaintiff alleges that before the hearing, Sgt. Simpson "retaliated against several of Plaintiff's witnesses."  At the August 7, 2008 hearing on the DR, Plaintiff pleaded not guilty and made a verbal statement in his defense.  Plaintiff also presented several witness statements corroborating the alleged threats by Sgt. Simpson.

Plaintiff was convicted of the DR and sentenced to 60 days in disciplinary confinement.  He sought administrative remedies via the prison grievance process but was denied.  Plaintiff challenged the DR in state court, but it was denied on the merits on January 29, 2010.  Plaintiff also filed in state court an emergency motion for an ex parte injunction against Sgt. Simpson, but this was denied because the trial court found that an adequate remedy at law existed within the prison grievance procedure.

Plaintiff alleges that Lt. Land, Warden Humphries, Assistant Warden Mock, and grievance appeals employee Solano violated his rights by having a "hands off" attitude about retaliatory DRs.  Plaintiff alleges that Officer Winburn and Captain Wimberley denied him due process in connection with his hearing in that they did not conduct a fair investigation and did not allow him to call live witnesses, tape record the hearing, or present camera evidence.  Plaintiff alleges that Sgt. Simpson threatened him in order to deter him from exercising his First Amendment right to file grievances and issued a

retaliatory DR.  Plaintiff also alleges that Officer Winburn threatened him.

Plaintiff seeks nominal, compensatory and punitive damages; court costs and fees relating to bringing the instant action; a declaratory judgment that inmates have the right to tape record DR hearings, be provided with all relevant documents prior to hearing, and call live witnesses; and injunctive relief.  (Doc. 1.)

The Court previously ruled that the complaint failed to state a claim for due process violations because Plaintiff's placement in disciplinary confinement for 60 days was not sufficient to trigger constitutional due process protections.  Plaintiff failed to state a claim of retaliation regarding the allegedly false disciplinary report because he was actually afforded adequate due process in the underlying hearing.  Accordingly, the only claims permitted to proceed beyond the initial screening were the First Amendment claims in the complaint as to alleged retaliatory threats by Sgt. Simpson and Officer Winburn.  (Docs. 11, 19.)

## II. DEFENDANTS' MOTION TO DISMISS

Defendants contend that partial dismissal of the complaint is warranted on the following grounds: (1) Plaintiff has failed to establish that Defendant Winburn violated his First Amendment rights by making retaliatory threats; (2) Defendants are immune from suit for monetary damages in their official capacity; (3) Plaintiff's claims for compensatory and punitive damages in the absence of a physical injury are barred by 42 U.S.C. § 1997e(e); and (4) Plaintiff is not entitled to declaratory or injunctive relief.  Accordingly, the only remaining claim would be a retaliatory threat claim against Defendant Simpson and the only relief available to Plaintiff is nominal damages.  (Doc. 34.)

*Case No: 1:11-cv-180-SPM -GRJ*

### III.  STANDARD OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, .  ___U.S. ___, 129 S.Ct. 1937, 1950 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth."  *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to

*pro se* complaint).[1]

## IV. DISCUSSION

### (1) First Amendment Claim against Defendant Winburn

To establish an actionable First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley* 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).  The Eleventh Circuit has held that a plaintiff suffers adverse action if the defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from exercising his First Amendment rights.  The plaintiff does not have to show that his own exercise of First Amendment rights has been chilled.  *Bennett,* 423 F.3d at 1254.

Plaintiff alleges that on August 1, 2008, Defendant Winburn served Plaintiff a DR for refusing to work.  Plaintiff requested camera evidence, documentary evidence, witnesses, and that the DR hearing be recorded.  Plaintiff wrote a statement in his defense and gave it to Officer Winburn.  Plaintiff alleges Officer Winburn then threatened him: "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!"  (Doc. 1.)

In their motion to dismiss, Defendants argue that Plaintiff has failed to state a

---

[1] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

claim against Defendant Winburn because (1) it is doubtful that Plaintiff's request for "unnecessary and irrelevant evidence" would qualify as protected speech; (2) a person of ordinary firmness would not likely be deterred from exercising his First Amendment rights because Defendant Winburn's alleged threat was merely "an exasperated statement" that expressed a "hope" and relied upon others to be carried out; and (3) no causal relationship existed between the allegedly protected speech and the retaliatory action because Defendant Winburn did not take retaliatory action. (Doc. 34.) In response, Plaintiff disputes that Defendant Winburn's alleged threat was an "exasperated statement" because she is married to another correctional officer who could have assigned her to pull the trigger; she worked in confinement every day and would likely be there if Plaintiff was gassed; and it was made in response to Plaintiff's request to present a defense in his disciplinary hearing. (Doc. 39.)

The undersigned concludes that Plaintiff's complaint adequately alleges facts that are, at this stage, entitled to a presumption of veracity and from which it may be inferred that Defendant Winburn made threats that could deter a person of ordinary firmness from filing grievances. As to the first prong of the *Bennett* inquiry, the discussion related to Plaintiff's preparation of a defense at his disciplinary hearing, arguably a constitutionally protected activity. As to the second prong, a reasonable jury could find that the alleged threat by Defendant Winburn–that she would be the one to pull the trigger when her co-workers gassed Plaintiff–was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Finally, as to the third *Bennett* prong, this is satisfied because it is reasonable to discern that the threat was intended to deter Plaintiff's preparation of his defense to a disciplinary report he alleges

was issued in retaliation by another officer. At this procedural posture, Defendant Winburn is not entitled to dismissal of Plaintiff's First Amendment retaliation claim for failure to state a claim upon which relief may be granted.

### (2) Official Capacity Claims

An official capacity claim is, in all respects other than name, to be treated as a claim against the entity of which the defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To prevail under § 1983 against that entity, a plaintiff must show that the entity itself was the "moving force" behind his constitutional deprivation; and the only way to do that is to identify a "policy or custom [of the entity that] played a part in the violation of federal law." *Id*. In the instant case, Plaintiff has not identified a policy or custom of the DOC that played a part in Defendants' alleged retaliation. Moreover, the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities. Therefore, Defendants are entitled to dismissal to the extent they are sued in their official capacities.

### (3) Compensatory and Punitive Damages

Defendants contend that Plaintiff's claims for compensatory and punitive damages are barred by the PLRA, in the absence of a physical injury. The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e); *Smith v. Allen* 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.2002)). The PLRA does not preclude an award of nominal damages if a plaintiff establishes the violation of a constitutional right. *Smith*, 502 F.3d at 1271 (citing *Carey v. Piphus*, 435 U.S. 247, 255 (1978)). In *Smith*, the Court held that

*Case No: 1:11-cv-180-SPM -GRJ*

a prisoner who alleged violations of the Religious Land Use and Institutionalized Persons Act due to the burden placed upon his religious exercise, but no physical harm, was limited by the PLRA to seeking only nominal damages (in addition to injunctive relief). In this case, Plaintiff has alleged no physical injury in connection with his retaliation claims, and he is therefore barred by the PLRA from seeking compensatory and punitive damages. *See id.* Defendants' motion to dismiss Plaintiff's claim for damages, other than nominal damages, should be granted.

### (4) Declaratory and Injunctive Relief

In his complaint, Plaintiff seeks a declaratory judgment that state prisoners have the right to: tape record disciplinary hearings, be provided with all relevant documents prior to the hearing, and call live testimony during the hearing. Plaintiff seeks "[a]n injunction to enforce the provisions of the declaratory judgment" and an injunction to prevent Defendants from retaliating against Plaintiff for filing the instant lawsuit. Plaintiff also seeks to "supplement this suit to bring new claims against any other staff member at MCI for any reprisal taken in behalf of the Defendants without having to file additional suits or any staff members that approve transfers, job re-assignments or reprisal DR's." (Doc. 1.)

Plaintiff's request for declaratory judgment stem from his claims regarding his disciplinary proceedings, which have already been dismissed by the Court. (Docs. 11, 19.) Accordingly, he may not continue to pursue the declaratory judgment and related injunction sought in his complaint. As to Plaintiff's request for permission to amend his suit to bring new claims against other staff members for potential future constitutional violations, he is not entitled to such relief. To the extent Plaintiff may want to amend his

complaint, he may seek leave of the Court to amend in the future. However, adding claims arising after the instant cause of action was filed on August 31, 2011 is improper. The accrual date of a § 1983 cause of action "occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Defendants' motion to dismiss Plaintiff's claim for declaratory and injunctive relief should be granted.

## VI. CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (Doc. 34) be **GRANTED IN PART** to the extent that:

(1) Plaintiff's claims against Defendants in their officials capacities be **DISMISSED;**

(2) Plaintiff's claims for compensatory and punitive damages against Defendants in their individual capacities be **DISMISSED**; and

(3) Plaintiff's claims for declaratory or injunctive relief be **DISMISSED;**

and that in all other respects, Defendants's motion to dismiss (Doc. 34) be **DENIED.**

It is further **RECOMMENDED** that this case be remanded to the undersigned for further proceedings, where the only remaining claims are the alleged retaliatory threats made in violation of the First Amendment by Defendants Simpson and Winburn and the only relief available to Plaintiff is nominal damages.

**IN CHAMBERS** this 14th day of June 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**