

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION**

Melvin Pérez,
    Plaintiff,

v.

Michael G. Simpson, et al.,
    Defendants.
_____/

PROVIDED TO
JACKSON CI ON

MAR 1 1 2013

FOR MAILING _M. P_

Case No.: 1:11-CV-180-SPM-GRJ

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Melvin Pérez, pro se, hereby submits his response in opposition to Defendants' motion for summary judgment. Because there are genuine issues of material fact that should be left for the jury to decide after hearing all of the evidence, this Court must deny summary judgment and the case proceed to trial. In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

Melvin Pérez ("Plaintiff") is a prisoner within the Florida Department of Corrections ("FDOC") and is currently housed at Jackson Correctional Institution ("JCI"). Proceeding pro se, Plaintiff filed a 42 U.S.C. §1983 action against Defendants Michael G. Simpson ("Simpson") and Fraun Hayley Winburn ("Winburn").

Plaintiff claimed that both Defendants violated his First and Fourteenth Amendment rights by threatening Plaintiff with reprisal for exercising his rights to grieve and present a defense and request evidence to a reprisal disciplinary report ("DR") written by Defendant Simpson.

At all times mentioned herein Defendant Simpson was a correctional officer at Mayo Correctional Institution ("MCI"). Defendant Winburn is also a correctional officer who is married to a captain employed at MCI. Captains are also called Officer-in-Charge ("OIC") because they supervise an entire shift. All correctional officers on a shift which hold any rank below captain must follow all orders issued by the OIC. All DR's must be approved by the OIC and the OIC has the authority to mace prisoners and assign who will

get to pull the trigger when macing a prisoner. When prisoners are maced while in confinement the mace applied is a big mace can that has a trigger on the top back side of the can. Before a prisoner is maced the prisoner must be in a cell by himself unless there is an emergency.

In FDOC some correctional staff uses mace as a means to punish prisoners for filing a grievance, complaints, helping other prisoners with grievances, lawsuits or even writing a witness statement on behalf of another prisoner. It is also common for some FDOC staff to write reprisal DR's against prisoners that file grievances or lawsuits against staff or write a witness statement against staff.

Plaintiff is one of these prisoners who files grievances and helps other prisoners with grievances and lawsuits against FDOC staff. Plaintiff has also written articles for prisoners' rights publications since 2007. Therefore, FDOC has labeled Plaintiff as a "writ writer" (Prisoners who file or help other prisoners file grievances and lawsuits against FDOC). As a result, Plaintiff has been subject to a lot of reprisal DR's, confinement placement and transfers. This is illustrated in the section of prior lawsuits.

At all times material herein, Defendants were acting under color of state law.

At all times mentioned herein, Plaintiff was already housed in disciplinary confinement ("DC") serving 60 days as a result of a DR written by Defendant Simpson's co-worker. That DR was written by a different confinement officer. As such, the term "more DR's" as used in this action means that Plaintiff already had a DR written by confinement staff and Defendant Simpson's DR was the second DR written by DC staff. Besides, as illustrated below, Defendant Simpson wrote Plaintiff a second DR besides the DR at issue in this action, which will be explained in more detail in the Statement of Material Facts.

Just to provide some relevant factual background, Plaintiff was a law clerk at MCI and was assigned as the head law clerk in the confinement unit, along with three (3) other law clerks and a law clerk trainee. As part of his job duties Plaintiff assisted prisoners in confinement with DR appeals and grievances against confinement staff. Accordingly some MCI staff and officers working confinement did not like the fact that some of the DR appeals were approved resulting in the DR's being dismissed. This caused Defendant

2

Simpson and his co-workers in confinement to target Plaintiff. Hence, Plaintiff would be subject to threats, harassment, and unreasonable working conditions while he worked in confinement.

This resulted in confinement staff placing Plaintiff in confinement when he went to deliver legal materials to confinement prisoners. However, this incident was challenged in a different case.

Defendants have now moved for summary judgment making several different claims in an effort to end this litigation. Yet, as illustrated in this response and attached affidavits, Defendants are not entitled to summary judgment because there are issues of material fact that are genuine and should be left for a jury to decide after hearing all of the evidence.

More specifically, Plaintiff's evidence and affidavits attached hereto create a genuine issue of material fact as Plaintiff's evidence presents a sufficient disagreement to require submission to a jury and entitle Plaintiff to proceed to trial.

## PLAINTIFF'S STATEMENT OF RULE 56 MATERIAL FACTS

Plaintiff rejects Defendants' "Statement of Rule 56 Material Facts" in their summary judgment motion. Motion at p.3-4. Defendants Simpson and Winburn are being untruthful about the facts concerning the July 31, 2008 and August 1, 2008 incidents. (See Exhibit "A" Affidavit of Melvin Pérez).

On July 31, 2008, at 8:51 a.m. Defendant Simpson was on the first (bottom) floor of wing two when he yelled, "if Lt. Land calls me one more time about a grievance you filed against me, I'm getting you gassed."[1] He further stated, "There is sixty-four other people in here and you want to be the bitch and write every thing up."[2] Subsequently, at around 9:05 a.m. to 9:10 a.m. (the same day), Defendant Simpson came to Plaintiff's cell door (2214) and told his cellmate (Robert Anton) ("Anton"), "yeah, I think I'm moving you today." Then, at 11:00 a.m. Defendant Simpson came back to Plaintiff's cell door and asked him what rule it

---

[1] The term gas as used herein refers to the use of chemical agents by staff in reprisal.

[2] In FDOC the term write up refers to a prisoner's exercise to his right to grieve.

3

was he wanted. When Plaintiff responded that he had already obtained the rule from another officer, Defendant Simpson asked Plaintiff, "why did you write me up" (meaning why did Plaintiff file a grievance). Simpson then said, "I am tired of Lt. Land calling down here about your grievances. I hate you. I have fifteen years left to retire and you are going to be back here for fifteen years." Defendant Simpson continued, "I will do everything I can to f- -k you. You ain't shit, you have no rights, and you are going to get more DR's."[3] "I worked back here for four years and never had a problem and in the last four days I have been called about your f- -k ass," added Defendant Simpson. "You will see and I will write up the officer giving you the grievance forms," concluded Defendant Simpson.

Afterwards, at about 12:27 p.m. Defendant Simpson stopped at cell 2213 to pull out two prisoners (Antonio Roan and Jarrord Roberts) assigned as confinement orderlies. At that time, Defendant Simpson told another officer, "that is the f- -k boy writing all those grievances." Defendant Simpson then looked in Plaintiff's cell and about three seconds later the other officer came to the cell door and also looked at Plaintiff. Thereafter, at 1:35 p.m. Defendant Simpson came back to Plaintiff's cell with the confinement sergeant and moved his cell mate (Anton) to cell 2215. Defendant Simpson then stated, "Yeah Anton you know how to do time but your roommate (Plaintiff) is going to prolong his time back here."

On the same day at 1:40 p.m., Defendant Simpson came back to Plaintiff's cell door and told him that he was going to take him outside of his cell to work for the Defendant, to clean the back floor railing with a toothbrush and the edge of the doors. Further, Simpson said that he had some Q-tips for Plaintiff to clean the holes on the doors. Defendant Simpson then smiled and walked away saying, "You'll get it tomorrow." Defendant Simpson never came back to pull Plaintiff out of his cell to clean.

The next day, on August 1, 2008 at 10:20 a.m., Defendant Winburn, the DR investigating officer, came to Plaintiff's cell and served him a DR for refusing to work written by Defendant Simpson. After

---

[3] Disciplinary reports. It is a custom at MCI to write prisoners that file grievances false DR's in reprisal for exercising their rights to grieve.

4

Defendant Winburn read Plaintiff the DR she asked him if he had any evidence Plaintiff wanted to call at the hearing, had any witnesses, and if he wanted to make a statement. Plaintiff requested camera evidence, documentary evidence, witnesses through both witness statements and live testimony. Also, that the DR hearing be tape recorded. Plaintiff then wrote a statement in his defense.

When Defendant Winburn came back to Plaintiff's cell at 12:40 p.m., to pick-up the forms, she gave Plaintiff along with his statement, she reviewed Plaintiff's request and told him that he did not need all he had requested, and that most was irrelevant. When Plaintiff indicated that he was requesting what he wrote on the forms, Defendant Winburn looked at Plaintiff and stated, "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!" She then walked away. Winburn is married to a captain who could have assigned her to pull the trigger; she worked in confinement at least five days a week and would likely be there if Plaintiff was gassed; Plaintiff's cell mate had already been moved to another cell, which is done before a prisoner is gassed, and Winburn's threat was made in response to Plaintiff's request to present a defense to a disciplinary report that was issued in retaliation by Defendant Simpson. (See Exhibit "B" Winburn's Answers to Requests for Admissions and Interrogatories.)

On August 10, 2008 at 11:38 a.m., Defendant Simpson came to Plaintiff's cell and made further threats after being questioned about Plaintiff's grievances. Norman Doty DC# L25038 was Plaintiff's cell mate when Defendant Simpson came to make additional threats to Plaintiff.

On this same day Plaintiff submitted a direct grievance to the Secretary of FDOC of sensitive nature against Defendants Simpson and Winburn (grievance log #08-6-24329) (See Exhibit "C"). After Defendant Winburn's initial threats Plaintiff filed a grievance about the incident (grievance log number 0809-212-018).

Then on September 22, 2008 at around 12:30 to 12:50 p.m. Plaintiff was taken out of his cell along with his cell mate Jason L. Beene and was told to sit on the front benches of E2. There was a camera that

5

had direct view of this area. At this time, confinement staff left the wing and Defendant Winburn began threatening Plaintiff. Winburn told Plaintiff that Classification Supervisor, Mike McCray, had called her that same morning about the aforementioned grievance Plaintiff filed against her. Winburn asked why did Plaintiff write her up and said, "what I told you is between me and you, you did not have to write me up." Winburn added, "You meant what you wrote, I meant what I said, I hope that when that day comes, I have my finger heavy for that day." (See Exhibit "D")

Then, on April 4, 2009 at approximately 10:30 a.m., Defendant Simpson stopped Plaintiff at center gate and searched Plaintiff. Officer Robert Young was also present alone with several prisoners. Defendant Simpson told Plaintiff that he would beat Plaintiff's ass if he filed a lawsuit against him and would get other officers to lock Plaintiff up (meaning place Plaintiff in confinement on a false charge) and give Plaintiff more DR's. Defendant Simpson said he was just doing his job and following orders. Officer Robert Young, who was present with Defendant Simpson, ultimately placed Plaintiff in confinement on a false disciplinary report, destroyed most of Plaintiff's legal work and Plaintiff's law books came up missing. (See Exhibit "L" and "M").

Contrary to Defendant Simpson's assertion that he did not write Plaintiff any subsequent disciplinary reports Plaintiff disputes such assertion with the following.

On October 7, 2008, McCloud was working as an orderly (see Affidavit of McCloud Exhibit "F") under the supervision of Officer Simpson. While McCloud was helping serve the lunch meal on the above date, Plaintiff asked McCloud if he could get him the copy of Chapter 33-501 Florida Administrative Code. McCloud told Plaintiff that if Officer Simpson would allow him, he would bring it to Plaintiff. Plaintiff then asked Officer Simpson if it was okay for him to check out chapter 33-501 and Officer Simpson responded "Hell no, and if you write it up I'll write you're a-s up for refusing to work and get you another 60 days in confinement like I did before." After this, Officer Simpson, McCloud, and another orderly went to the first floor to finish cleaning and preparing the food cart to return to food service. Officer Simpson went to his

6

desk and began writing a DR. About 20 minutes later, 2:45 -3:00 p.m., Officer Simpson returned to Plaintiff's cell door holding a DR filled out for refusing to work with Plaintiff's name on it and stated to Plaintiff, "now you little f - -king writ writer, think about what you want to do, I'll make sure you stay in disciplinary confinement." Plaintiff then agreed that he would not write a grievance against Officer Simpson for not giving him Chapter 33-501, if Officer Simpson did not turn-in the DR. Officer Simpson agreed. Here Simpson's threats deterred Plaintiff from filing a grievance.

While Plaintiff did file a petition for writ of mandamus in the Second Judicial Circuit in and for Leon County challenging the DR, Plaintiff did not raise the same issues brought in this action. Accordingly, that decision by the Leon County court did not address the claims in this action. Further, Plaintiff only raised grounds in that action that could only be addressed in a mandamus. Similarly, the claims raised in this case could not be raised in that mandamus proceedings. Hence, the decision of Leon County does not address the claims raised in this litigation.

**Affidavit of Jarrord Roberts:**

The affidavit of Jarrord Roberts ("Roberts" Exhibit "E") states that on July 31, 2008, he was in the same confinement unit with Plaintiff. Roberts' cell location was E-2213, which was next to Plaintiff's cell (see complaint page 13, paragraph 34). Roberts states that on the above date, he was taken out of his cell by Officer Simpson to work as a confinement orderly along with his cellmate Antonio Roan ("Roan"). Roberts and Roan started cleaning the confinement wing after serving the lunch meal. While Roberts and Roan were cleaning Officer Simpson was at his desk looking at a list of DR's and how much time they carry. While looking at the list Officer Simpson told Roberts and Roan "let me see what DR I should write him, he wants to file grievances against me, I'll show him I can write too," referring to Plaintiff. "I got a good one here, refusing to work," said Officer Simpson. He then began writing a DR against Plaintiff for refusing to work. "I am going to teach that mother f- -ker how we do it at Mayo, and if any of you two say anything or write a statement against me, I will f- -k you too," said Officer Simpson. Officer Simpson never asked

7

Plaintiff to come out of his cell nor did he order Plaintiff to do so before he wrote the DR. Officer Simpson came directly to Roberts' cell so he and Roan could serve lunch and clean up the wing, as Simpson did every day he worked. On August 4, 2008, Officer Winburn came to Roberts' cell and asked him if he wanted to make a statement. Roberts signed a voluntary refusal because he did not want to stay in confinement for longer than he had been sentenced. However, Roan his cell mate, made a statement. When Officer Simpson read his statement he came to Roberts' cell and told Roan "you don't bite the hand that feeds you." Officer Simpson then fired Roan and Roberts as orderlies. Officer Simpson came back to Roberts' cell several times that same day and would call Roan to the cell door and tell him "you ain't sh-t," "you f - -ked up, why did you write a statement against me. I work you every day, feed you and you f - -k me over for that f - -king piece of sh-t that wants to file grievances against me," referring to Plaintiff. Officer Simpson would stop talking and [sic] not look towards Plaintiff's cell to see if Pérez was on his cell door. Had it not been for the reprisal that would follow Roberts' statement, Roberts would have written a statement on behalf of Plaintiff. Roberts did hear Officer Simpson threaten Plaintiff with writing him a DR for filing grievances against Officer Simpson. Roberts also heard Officer Simpson tell Plaintiff that he will gas him if Lt. Land called one more time about a grievance. Officer Simpson came to Plaintiff's cell several times that day to curse at Plaintiff and threaten him with DR's for filing grievances.

**Affidavit of Michael A. McCloud:**

The affidavit of Michael A. McCloud ("McCloud" Exhibit "F") states that McCloud was a confinement orderly from around September 19, 2008 to October 19, 2008, in the same confinement unit where Plaintiff was housed. On October 7, 2008, McCloud was working as an orderly under the supervision of Officer Simpson. While McCloud was helping serve the lunch meal on the above date, Plaintiff asked McCloud if he could get him the copy of Chapter 33-501 Florida Administrative Code. McCloud told Plaintiff that if Officer Simpson would allow him, he would bring it to Plaintiff. Plaintiff then asked Officer Simpson if it was okay for him to check out chapter 33-501 and Officer Simpson responded "Hell no, and if you write it up I'll

8

write you're a-s up for refusing to work and get you another 60 days in confinement like I did before." After this, Officer Simpson, McCloud, and another orderly went to the first floor to finish cleaning and preparing the food cart to return to food service. Officer Simpson went to his desk and began writing a DR. Officer Simpson told McCloud and the other orderly that he was writing Plaintiff a DR for refusing to work before Plaintiff wrote him up. About 20 minutes later, 2:45 -3:00 p.m., Officer Simpson returned to Plaintiff's cell door holding a DR filled out for refusing to work with Plaintiff's name on it and stated to Plaintiff, "now you little f - -king writ writer, think about what you want to do, I'll make sure you stay in disciplinary confinement." Plaintiff then agreed that he would not write a grievance against Officer Simpson for not giving him Chapter 33-501, if Officer Simpson did not turn-in the DR. After Officer Simpson finished talking to Plaintiff he told McCloud and the other orderly, "that's how I handle them f - -king writ writers.

**Affidavit of Jeffery Sherlock:**

The affidavit of Jeffery Sherlock ("Sherlock" Exhibit "G") states that on July 31, 2008, while housed in E-Dormitory confinement unit Sherlock was assigned to cell 2208 lower. At around 8:30-9:00 a.m. (July 31, 2008) Sherlock was awakened by someone yelling. When Sherlock looked out of his cell door window he saw Officer Simpson yelling at Plaintiff and throwing his hands in the air. Officer Simpson told Plaintiff that he would gas Plaintiff if Lt. Land called one more time about a grievance he filed against Officer Simpson. He also told Plaintiff that he hated him and he was going to f- -k him every time he would get a chance and he was going to give him more DR's for writing grievances. Officer Simpson did this several times that same day and later that day Officer Simpson moved Plaintiff's cell mate to another cell. During the investigation process of the DR, Sherlock was not asked to make a statement by Defendant Winburn. Had Sherlock been interviewed, he would have written the above facts in said statement.

**Affidavit of Robert Anton:**

The affidavit of Robert Anton ("Anton" Exhibit "H") states that on August 4, 2008, Officer F. Winburn came to Anton's cell door and asked him if he wanted to make a statement on behalf of Plaintiff. Anton

9

signed a voluntary refusal at the time. Anton did so because when he was moved out of his cell with Plaintiff, Officer Simpson told him that he would f - -k him if Anton wrote a statement against him. Anton had a 30-day deadline to file a federal habeas corpus petition and could not afford to do any more time in confinement for writing a statement. Had Anton not been threatened by Officer Simpson, he would have written the following statement.

Between July 27-28, 2008, Anton went to the confinement recreation yard while housed in confinement. While Anton was in the recreation yard Officer Simpson asked him about Plaintiff. Anton told Officer Simpson that Plaintiff was a good cellmate. Simpson then responded, "Pérez is no good. He likes writing grievances, I'm moving him to another wing." On July 31, 2008, at around 8:45-9:00 a.m., Anton was awoken by someone yelling. When Anton got out of his bunk he saw Plaintiff in front of the cell door and Officer Simpson was yelling at him. Officer Simpson told Plaintiff that he was tired of Lieutenant Land calling him about Plaintiff's grievances and that he would gas him (apply chemical agents), if Lt. Land called one more time. Officer Simpson went on with more threats and profanity until he got tired. About 10-15 minutes after the first incident, Officer Simpson came back and told Anton that he was going to move him to another cell. About two hours later Officer Simpson came back to the cell door and began talking to Plaintiff. During this conversation, Officer Simpson began yelling at Plaintiff and told him that he was going to have Plaintiff in confinement for 15 years for writing grievances against him. That he would f- -k Plaintiff every time he (Officer Simpson) had a chance. That Plaintiff had no rights that he was sh-t, and he was getting more DR's for writing grievances. Officer Simpson came back at around 1:30-1:45 p.m. and moved Anton to another cell. While he was moving Anton he told him that Anton knew how to do time, but that his roommate (Plaintiff) was going to prolong his time in confinement. Further, Officer Simpson told Anton that Plaintiff was a piece of sh-t and he was going [to] f- -k Plaintiff up, and that if Anton wrote a statement against him he would f- -k Anton also. This is the reason why Anton did not write the statement when Officer Winburn came to investigate the DR.

**Affidavit of Felix Abreu:**

The affidavit of Felix Abreu ("Abreu" Exhibit "I") states that on August 7, 2008, after Plaintiff went to disciplinary report court Defendant Winburn came to Abreu's cell and asked him if he wanted to write a witness statement on behalf of Plaintiff. Abreu responded by asking Defendant Winburn if there would be any repercussions against him for writing a statement. Winburn responded that there would be no repercussions from her, but there will be from the other officers working the confinement unit. Winburn then told Abreu, "just sign a voluntary refusal and you will be okay." Had it not been for the repercussions that will follow Abreu's statement, he would have written a statement to the following facts.

On July 31, 2008, Abreu was housed in E-Dormitory, wing two confinement unit on the top floor across from Plaintiff's cell. During the morning hours from 8:30 a.m. to 12:00 p.m. Officer Simpson came by Plaintiff's cell and threatened Plaintiff with writing him more DR's for filing grievances against him. This happened about two or three times that morning. Officer Simpson also threatened Plaintiff with gas (chemical agents) if Lt. Land called one more time about a grievance Plaintiff wrote. Abreu also remembered that Plaintiff's cellmate was moved to another cell after lunch. Earlier that morning Officer Simpson told his cellmate that he was going to move him out. Abreu would have written this statement if no reprisal was to be taken against him.

**Affidavit of Mark A. Kohut:**

The affidavit of Mark A. Kohut ("Kohut" Exhibit "J") states that on July 31, 2008, he was housed in E-Dorm, Wing 2, cell 2111, as an administrative confinement inmate. On July 31, 2008, Plaintiff was housed in E-Dorm, Wing 2, cell 2214, directly across from Kohut's cell on top tier. From his cell, 2111, Kohut was able to hear and observe everything that took place outside of cell E2214. On July 31, 2008, at no less than four different times did Kohut witness a correctional officer stop at cell E2214 and inform Plaintiff that he [the correctional officer] was going to issue Plaintiff as many disciplinary reports as he could, even if he had to lie, because Plaintiff had written numerous grievances on the correctional officers

11

assigned to E-Dorm, Wing 2. On July 30, 2008, Kohut observed Plaintiff submit numerous grievances for processing.

**Witness Statement of Jimmy Scott:**

The witness statement of Jimmy Scott ("Scott") Defendants' Motion for Summary Judgment Exhibit C.000017 states Scott overheard Officer Sampson [sic], state to inmate Pérez, that he hate him, because every day since he been back here - - inmate Pérez. Write, or wrote a grievance on him - - if he keep [sic] writing him any more grievances. He are cosing [sic] to coas [sic] him - - and that he have [sic] (15) years to work here at Mayo C.I. and that's how many days he would have on D.C. confinement - - if he have [sic] to write him a D.R. every day he are [sic] working back here. So stop filing on me - - DR, I will show you - -.

**Witness Statement of Taireef Meynard:**

The witness statement of Taireef Meynard ("Meynard") Defendants' Motion for Summary Judgment Exhibit C.000018 states that at around 11:01 a.m. c/o Simpson was yelling at some one when I looked out my cell window I saw Officer Simpson standing infrond [sic] of cell 14 up stairs stating [sic] that he hated him, that everyday Pérez has wrote him up, that he will do everything in his power to f- -k him. That he has 15 years to working DOC at Mayo and that Pérez will have 15 years in confinement as long as he is here since he wants to write him up. Officer Simpson continued to state that he hated inmate Pérez, and would gas his ass.

Meynard wrote a note in this statement that states Due to c/o Simpsons actions towards this inmate I am afraid of him. Let is [sic] also be noted that c/o Simpson has colaberated [sic] with Sgt. Singletary who have already wrote me a DR on 7/29/2008 I don't need no more reprisal please let this statement [sic] reflect anymore reprisal.

**Witness Statement of Antonio Roan:**

Roan's statement which can be found at Defendants' Motion for Summary Judgment Exhibit C.000024 states: I don't really recall what happened but I believe the officer doesn't like the fact that Pérez has been writing him up. So I think it has caused problems between the two. It's a retaliation by the officer.

**Affidavit of David Choppa:**

The affidavit of David Choppa ("Choppa" Exhibit "K") states that on October 20, 2008, I was housed in the same cell with Melvin Pérez while in disciplinary confinement. At 9:58 a.m., Sgt. Bevis and Officer Simpson came to my cell and told me to get dressed because the doctor wanted to see me. When all three of us got to the foyer, Sgt. Bevis asked me how I was doing. I replied that, "I would be better when I got out of confinement." Officer Simpson in response to my statement told me, "You could get out today and have your choice of Dorm to live in, if you beat your roommate's ass." I then told Officer Simpson, "I take it that you don't like him much." Officer Simpson stated that, "inmate Pérez wrote me up." Nurse Smith was also present when Officer Simpson said this. I did not act on this remark.

**Affidavit of Donald D' Angelo:**

The affidavit of Donald D' Angelo ("D' Angelo" Exhibit "L"), states that on April 4, 2009, at approximately 10:30 a.m. D' Angelo was trying to obtain a pass from Officer Robert Young at center gate to go to the general library when I heard Sgt. Michael G. Simpson and Officer Young talking to Melvin Pérez. Sgt. Simpson told Pérez that he would beat him up (assault him) if he filed a lawsuit against him because he was just doing his job when he wrote Pérez a disciplinary report while Pérez was inside confinement. Pérez asked Sgt. Simpson how he was doing his job by writing him a DR in reprisal for filing grievances. Simpson then said, "I was just following orders." Sgt. Simpson also told Pérez that it was not in his best interest to pursue suit because not only was he going to beat Pérez's a-s but he will get other guards to lock him up (place him in confinement), gas him (apply chemical agents) and Simpson and other guards would write Pérez more DRs. When Pérez walked off to the law library I overheard Sgt. Simpson tell Officer

13

Young that Lt. Marc Land had called Simpson and told him to write Pérez a DR for writing grievances while in confinement, that the DR should stop Pérez from writing grievances.

**Affidavit of Ernestor Enchautegui:**

The affidavit of Ernestor Enchautegui ("Enchautegui" Exhibit "M") states that in June 16, 2009, at approximately 9:40 a.m. Sgt. Edward Wilton and Officer Robert Young were inside Melvin Pérez's cell (D-3104) searching his footlocker. When these two guards went inside his cell Pérez called me to his cell. When I arrived next to the cell door I overheard Sgt. Wilton tell Officer Young that Lt. Land had ordered Wilton that Pérez had to be locked up (placed in confinement) for writing grievances and helping other prisoners on the wing to write grievances. At that point Officer Young smiled and told Sgt. Wilton that he would write the disciplinary report. Next, Pérez was told to go to the foyer where he was then taken to confinement.

**Affidavit of John E. Parker:**

The affidavit of John E. Parker ("Parker" Exhibit "N") states that on Tuesday November 18th 2008, as the shift 4 to 12 approached; E2 confinement wing. 8 to 4 shift confinement Sgt. Beevas [sic] – confinement officer M. Simpson – officer J. King – officer Roberts entered no [sic] [and] rushed into E2201 cell; I then heard [sic] fleash being severly [sic] bounded, next I heard fleash [sic] hit the floor, then I heard cuff up several times, next I heard rape about four times. Then I heard don't cry now, shut up nigger. Confinement officer M. Simpson threatened too [sic] F that same person thirty minutes [sic] earlier. That person was Mardie Assen.

**Affidavit of Brian E. Glick:**

The affidavit of Brian E. Glick ("Glick" Exhibit "O"), states that Glick has been an inmate at Mayo CI from April of 2006 until present. During the summer of 2009, Glick was placed in disciplinary confinement and given several DRs as retaliation for filing inmate grievances. The policy of using confinement and DRs

14

to intimidate inmates is and has been rampant at Mayo CI, and it is well known by most inmates that writing grievances is a sure way to go to confinement.

**Affidavit of Jesus Garcia:**

The affidavit of Jesus Garcia ("Garcia" Exhibit "P"), states that on December 9, 2008, December 12, 2008 and December 13, 2008, Garcia filed a grievance against Officer Richardson working at Mayo CI, D-Dormitory on the 8:00 a.m. to 4:00 p.m. shift. On December 15, 2008, at around 11:45 a.m. to 12:00 p.m., Sgt. Kimbril and another officer conducted a count where all prisoners were locked in their cell. After count, Sgt. Kimbril ordered Officer Richardson in the control room to open all cell doors and called every prisoner on the wing to come to their cell door (about 88). Sgt. Kimbril then announced that there were some prisoners filing grievances on the wing against Officer Richardson and that he could take care of them or he could leave it up to the prisoners on the wing. Sgt. Kimbril further said that if the grievances kept being filed, he would lock up half of the wing in one week (place in to confinement). Also, that he already had locked up inmate Shamir Suber for writing grievances against Officer Richardson.

**Affidavit of Donald Sutherland:**

The affidavit of Donald Sutherland ("Sutherland" Exhibit "Q"), states that between 12-10-08 and 12-16-08, Sutherland filed several grievances against Officer T. Richardson working in D-Dormitory at Mayo CI. On 12-17-08, Officer Dennis working on the 4:00 – 12:00 a.m. shift came to search his cell. During this search he made comments about Sutherland writing grievances against Officer Richardson and said that the search was ordered by higher officials. On 12-18-08, at around 6:40 p.m. Sgt. Stephenson and Officer Dennis conducted another search. During this second search, these officers destroyed and confiscated his mattress. They also did an un-clothed search. Around 8:30 p.m. the same day. Sutherland approached the officers' station and asked about a mattress and the officers told him that they will locate one for him. At 10:30 p.m. the same day, during master count, Sutherland again asked Officer Dennis about a mattress. He responded, "I forgot," and walked away laughing while saying that, "you have to wait until the morning."

Sutherland spent that night sleeping on a steel bunk without a mattress at cold temperatures. The next day (12-19-08), Sutherland declared a psychological emergency after breakfast and was escorted to the Mental Health Department by an officer. Sutherland told Doctor Lowery what took place and she filed an incident report about the incident and arranged for him to go to the Laundry Building to get a mattress. The laundry supervisor, Sgt. Hart, called the dormitory officer to verify that he did not have a mattress. They did so and he was issued a mattress. That same day (12-19-08), at around 4:30 p.m. Officer Dennis called Sutherland and told him to report to Sgt. Stephenson. When he did the sergeant apologized to Sutherland and asked him if he was going to file a grievance against him. Sutherland did not respond. That same night Sutherland went to the officers' station to request medication. Sgt. Stephenson again asked Sutherland if he was going to file a grievance against him. He did not respond. Major Hendricks called Sutherland on 12-21-08 to ask him what happened. He told him the above facts and the major responded that he will address the issue. The above incident took place as a result of the grievances Sutherland filed against Mayo CI staff.

**Affidavit of Guillermo Foster:**

The affidavit of Guillermo Foster ("Foster" Exhibit "R") states that on or about January 2008, Foster submitted a grievance at Mayo CI regarding the implementation of new institutional operations that affected Foster's rights to access the law library, and how prisoners at Mayo CI were being deprived of the 25 hours of law library access mandated by DOC rules. Foster also grieved about not receiving sufficient recreation time. Foster never received a response to his grievance. Consequently, Foster wrote a letter on March 2008, to the office of the Regional Director of Institution, Region II, outlining the problems prisoners had at MCI. Two weeks later Foster received a response from the Regional Director. In April 2008, Foster submitted a reply to the response written by the Regional Director. Subsequently, on April 10, 2008, Warden Martha Humphries and Assistant Warden Freddie Mock called Foster to the warden's office regarding his reply. In the warden's office Humphries and Mock threatened to place Foster in confinement for writing the complaint to the Regional Director. Warden Humphries also told Foster that if he wrote

16

another letter to the Regional Director she would have Foster placed in confinement. At that time, Foster was assigned to work in the inmate barber shop as a barber and had worked there for 2½ years without any problems. Next, on April 15, 2008, Foster was fired from his work assignment as a barber and placed in inside grounds as a punishment for filing the compliant to the Regional Director. When Foster saw his supervisor, Sgt. Lawson, he asked him why was his work assignment charged [sic] Sgt. Lawson responded that the warden (Humphries) ordered him to remove Foster from the barber shop. Thereafter, Foster submitted a grievance of reprisal under an exception in 33-103 (F.A.C.) that allows prisoners to file directly with the Secretary of DOC a grievance of sensitive nature. M. Solano returned his grievance without processing it stating that the grievance was not of sensitive nature and should be addressed with the institution. Solano did not investigate Foster's claim of reprisal. Once again, Foster filed another grievance this time an emergency grievance with the FDOC secretary and pointed out his fear of further reprisal by Warden Humphries if he submitted his grievance at the institution. Again, Solano did not investigate his reprisal claims and did not accept his grievance as an emergency and told Foster to submit his grievance at the institution. Because Foster had no other place that would hear his reprisal complaints he submitted his grievance at Mayo CI, but also filed a motion for an emergency injunction to the Third Judicial Circuit, Lafayette County, to stop Warden Humphries and her staff from further reprisal against Foster for the exercise of his right to file complaints against MCI staff or its operations.

## MEMORANDUM OF LAW

### I.    Standard for Summary Judgment :

Federal Civil Procedure Rule 56 (c) provides for the granting of summary judgment "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." **Lofton v. Sec'y of the Dep't of Children and Family**

17

**Servs.**, 358 F.3d 804, 809 (11ᵗʰ Cir. 2004) (citing **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); **Tipton v. Bergrohr GMBH – Siegen**, 965 F.2d 994, 998 (11ᵗʰ Cir. 1992)). "An issue of fact is material and genuine if a rational fact finder could find for the nonmoving party on a fact necessary to establish an element of the claim under applicable substantive law." **Ross Neely Sys. v. Occidental Fire and Cas. Co.**, 196 F.3d 1347, 1350 (11ᵗʰ Cir. 1999).

Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." **Mullins v. Crowell**, 228 F.3d 1305, 1313 (11ᵗʰ Cir. 2000) (citing **Clark v. Coats and Clark, Inc.**, 929 F.2d 604, 608 (11ᵗʰ Cir. 1991)). A common way for the moving party to meet its burden is by demonstrating that the non-moving party cannot show an essential element of his case. **Riley v. Newton**, 94 F.3d 632, 638-39 (11ᵗʰ Cir. 1996).

In determining whether the burden has been met, the court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." **Kingsland v. City of Miami**, 382 F.3d 1220, 1226 (11ᵗʰ Cir. 2004) (citations omitted).

A "party opposing a properly – supported motion for summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.'" **Brannon v. Thomas County Jail**, 280 Fed. App. 930, 932, 2008 WL 2340353 *2 (11ᵗʰ Cir. 2008) (Citing Fed.R.Civ.P. 56 (e)). "There is a genuine issue of material fact if the non-moving party has produced evidence such that a reasonable fact-finder could return a verdict in its favor." Brannon, 280 Fed. Appx. at 932, 2008 WL 2340353 at *2 (quoting **Waddell v. Valley Forge Dental Assocs., Inc.**, 276 F.3d 1275, 1279 (11ᵗʰ Cir. 2001).) "The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." **Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.**, 483 F.3d 1265, 1273 (11ᵗʰ Cir. 2007) (internal quotations omitted).

18

II.     **First Amendment Retaliation Claim:**

To establish an actionable First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a casual relationship between the retaliatory action and the protected speech." **Smith v. Mosley**, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing **Bennett v. Hendrix**, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

The Eleventh Circuit has held that a plaintiff suffers adverse action if the defendant's alleged retaliatory conduct would likely deter a person of ordinary firmness from exercising his First Amendment rights. The plaintiff does not have to show that his own exercise of First Amendment rights has been chilled. *Bennett*, 423 F.3d at 1254.

III.    **Application of the Law to the Rule 56 Facts**

**Claim Against Winburn:**

As to Defendant Winburn, Defendants argue that she is entitled to summary judgment because Winburn never made the alleged statement. However, the affidavit of Plaintiff disputes Winburn's claim that she did not make this statement. Moreover, Winburn has also threatened other prisoners during her investigation of DR's. See for example, Affidavit of Ronald Cogmon Exhibit "S." This creates a genuine issue of material fact to entitle Plaintiff to proceed to a jury.

Similarly, Defendant Winburn claims that Plaintiff requested a lot of unnecessary and irrelevant evidence. Still, it was not up to Winburn to determine if the evidence was irrelevant. That is the job of the DR team. See Florida Administrative Code 33-601.307, see also[4]. Even so, as shown in this response a lot of the evidence requested by Plaintiff turned out to be very relevant in proving his claim. See for example,

---

[4] "…it would be useful for the committee to state its reason for refusing to call a witness, whether it be for relevance, lack of necessity, or the hazards presented in individual cases." **Wolff** at 99 S. Ct. 2979.

Affidavit of Kohut, Affidavit of Sherlock, statement of Jimmy Scott and Taireef Meynard. Sherlock was never questioned by Winburn. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement," **Smith v. Mosley**, 532 F.3d 1270, 1276 (11th Cir. 2008).

Reviewing Defendants' Exhibit C.000005 to C.000010, C.000016 to C.000018, C.000020, C.000024, and C.000032, shows that this requested evidence for the disciplinary hearing complained or showed Plaintiff's complains to the prison's administrators about the conditions of his confinement. Namely, reprisal, threats of further reprisal and the cover-up of unprofessional activity by Winburn's co-worker that resulted in the violation of Plaintiff's constitutional rights.

Thus, Plaintiff's claim against Winburn must proceed to trial. Winburn's attempt to distort Plaintiff's claim fails in light of the arguments raised in the Response and the decisions of the Eleventh Circuit and U.S. Supreme Court that show that Plaintiff was exercising the right of free speech when Winburn made the threats.

An opportunity for the inmate to call witness and present documentary evidence to a disciplinary report is a right protected by the First Amendment and constitutes a protected speech.

The right to present a defense to a DR was clearly established in **Wolff v. McDonnell**, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974)[5].

As to the first prong of the Bennett inquiry, the discussion related to Plaintiff's preparation of a defense at his disciplinary hearing, is a constitutionally protected activity under Wolff, supra.

---

[5] ("We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense…" 94 S. Ct. 2979).

As to the second prong, a reasonable jury could find that the threats by Defendant Winburn – that she would be the one to pull the trigger when her co-workers gassed Plaintiff – was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.

Finally, as to the third Bennett prong, this is satisfied because it is reasonable to discern that the threat was intended to deter Plaintiff's preparation of his defense to a disciplinary report that was issued in retaliation by Defendant Simpson and another officer had wrote Plaintiff the first DR which caused the initial confinement placement and all three officers worked in confinement (Winburn, Simpson, and the first officer.) Accordingly, Defendant Winburn is not entitled to summary judgment.

A key factor in this claim is that Winburn is married to a captain who could have assigned her to pull the trigger; she worked in confinement every day and would likely be there if Plaintiff was gassed; it was made in response to Plaintiff's request to present a defense in his disciplinary hearing, Plaintiff's cellmate had already been moved out which takes place before a prisoner is maced and Simpson had threatened Plaintiff with mace.

Winburn failed to produce a single piece of admissible evidence indicating that the threats would not deter a person of ordinary firmness from presenting a defense in Plaintiff's disciplinary hearing and request evidence; instead Winburn states that she never threatened Plaintiff.

Likewise, the second prong of Bennett does not require Plaintiff to show that he stopped or did not turn in his witness statement and other request for evidence because of the threats, but rather a person of "ordinary firmness" would be so deterred.

Plaintiff has clearly established a First Amendment claim against Winburn under the three-prong test set forth in Bennett, supra. Further, genuine issues of material fact exist in this case because Plaintiff's evidence presents a sufficient disagreement to require submission to a jury. As such, Winburn is not entitled to summary judgment.

**IV.    Claim Against Simpson:**

Defendants also contend that Simpson did not make the statements ascribed to him, therefore there could be no liability and Defendant Simpson is entitled to summary judgment (Motion at page 13). However, the evidence presented in this response disputes Defendant Simpson's assertion. Any reasonable jury will find that Simpson made the alleged threats.

The Defendant attempts to argue that this claim is legally precluded under **O'Bryant v. Finch**, 637 F.3d 1207 (11th Cir. 2011). Yet, this argument fails because the Court has already dismissed the claims it found to be precluded. Also the Florida court decision on the mandamus action has nothing to do with the claims raised in this case. Accordingly, Plaintiff's claims are entitled to proceed to trial.

First, Plaintiff has a right to file grievances. That is not disputed.

Second, Had Plaintiff not filed any grievances while in confinement against confinement staff, Plaintiff would have never received a DR from Simpson.

As stated above, Plaintiff had received an initial DR from confinement staff before Simpson wrote the refusing to work DR. Therefore, Simpson's first DR did constitute "more DR's" being written by confinement staff. If this was not enough when Simpson wrote the DR that did not get turned in because Plaintiff agreed not to file a grievance against Simpson, this still constitutes "more DR's." The fact that he did not process that DR does not change the fact that Simpson wrote it and used it to deter Plaintiff from filing the grievance against Simpson.

The fact that Simpson did not gas Plaintiff does not change the fact that the threat was made in violation of Plaintiff's First Amendment right.

The evidence shows that Plaintiff did suffer an adverse action as a result of filing grievances against confinement staff.

As shown in the affidavits attached to this response, there is no way Defendant Simpson can argue in good faith that he did not violate Plaintiff's First Amendment rights. These affidavits present evidence

22

which create a sufficient disagreement to require submission to a jury. "The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury..." **Dedeland Depot, Inc. Supra at 1273.**

Accordingly, Plaintiff is entitled to proceed to trial on this claim and Defendant Simpson is not entitled to summary judgment.

**V.      Defendants are not entitled to qualified immunity:**

Defendants in their motion pages 15-18 do not argue that Simpson is entitled to qualified immunity. Therefore, they have conceded to Simpson's violation of Plaintiff's First Amendment right.

As for Winburn, she is not entitled to qualified immunity because it was clearly established by the U.S. Supreme Court in Wolff that a prisoner has a right to present evidence to a disciplinary report. And any action intended to deter a prisoner from exercising said right will have to be found to violate said right. Winburn's actions were clearly taken with the intent to deter Plaintiff from going forward with his defense. Whether the threat was carried out does not change the violation. In this case, Winburn's threat caused the violation, regardless of the after-the-fact circumstances. Plaintiff had every reason to believe that the threat was real, considering all the facts before the incident with Winburn.

Accordingly, Defendants Simpson nor Winburn are entitled to qualified immunity.

**VI.     There are genuine Issues of Material Fact that preclude summary judgment for Defendants on Plaintiff's First and Fourteenth Amendment claims:**

The declarations of the Plaintiff and the Defendants' are squarely contradictory as to the incidents with Defendants Simpson and Winburn. This is clearly a genuine issue of material fact.

The factual dispute is also material. Under the governing law, Plaintiff's evidence is sufficient to show that there exists a genuine issue of material fact on the issue of:

a) Whether Defendant Simpson threatened Plaintiff with reprisal and issued the refusing to work DR to chill Plaintiff's First Amendment right;

b) Whether Defendant Simpson's action of showing Plaintiff a handwritten DR in order to stop Plaintiff from writing a grievance against Simpson and telling Plaintiff that he would not turn it in if Plaintiff does not write Simpson up;

c) Whether Winburn's threats at the time Plaintiff was requesting evidence to a reprisal DR written by Simpson were intended to stop or deter Plaintiff from not presenting a defense or requesting evidence to challenge such DR;

d) Whether Simpson and Winburn's additional threats were made with the intent of deterring Plaintiff from writing any further grievances against Defendants since Plaintiff had wrote grievances against the initial threats.

A reasonable jury could find for the Plaintiff on the facts in the Plaintiff's declaration, and accompanying declarations from Plaintiff's witnesses.

## VII.    Defendants have failed to meet their burden that there are no genuine issues of material fact:

Finally, Defendants have failed to meet their burden that there are no genuine issues of material fact to be entitled to summary judgment. In particular, Defendants have failed to present affirmative evidence that Plaintiff will be unable to prove his case at trial. Nor do Defendants prove that Plaintiff has no evidence to support his case. Indeed, Defendants have not successfully negated an essential element of Plaintiff's case. In contrast, Plaintiff has shown the existence of a genuine issue of material fact. In the same vein, Plaintiff has pointed to evidence in the record and presented additional evidence sufficient to withstand a direct verdict motion at trial. Similarly, Defendants have not shown that the evidence presented by Plaintiff is implausible. Therefore, Defendants are not entitled to summary judgment because they have failed to meet their burden.

## CONCLUSION

Defendants have not shown, by reference to affidavits or depositions on file, that there are no genuine issues of material fact to be determined at trial.

In contrast, Plaintiff has shown that a reasonable fact-finder would view the evidence in this case and find in favor of Plaintiff.

Therefore, Defendants are not entitled to summary judgment as a matter of law. Accordingly, this case should proceed to trial.

Respectfully submitted this 11th day of ~~February~~ March 2013.

Melvin Pérez DC# X11781
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445-3144

## OATH

Under penalty of perjury, I hereby declare that the facts set forth herein are true.

Melvin Pérez DC# X11781

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of this Response has been furnished by U.S. Mail to Cedell Ian Garland, Assistant Attorney General, The Capitol, PL-01, Tallahassee, Florida 32399-1050 on this 11th day of ~~February~~ March 2013.

Melvin Pérez DC# X11781

25

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

Melvin Pérez,
    Plaintiff,

v.                       Case No.: 1:11-CV-180-SPM-GRJ

Michael G. Simpson, et al.,
    Defendants.
_____/

## PLAINTIFF'S APPENDIX IN SUPPORT OF
## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Exhibit | Document |
|---|---|
| "A" | Affidavit of Melvin Pérez |
| "B" | Winburn's Answers to Requests for Admissions and Interrogatories |
| "C" | Grievance to FDOC Secretary of Sensitive Nature |
| "D" | Grievance to FDOC Secretary |
| "E" | Affidavit of Jarrord Roberts |
| "F" | Affidavit of Michael A. McCloud |
| "G" | Affidavit of Jeffery Sherlock |
| "H" | Affidavit of Robert Anton |
| "I" | Affidavit of Felix Abreu |
| "J" | Affidavit of Mark A. Kohut |
| "K" | Affidavit of David Choppa |
| "L" | Affidavit of Donald D' Angelo |

1

"M"                              Affidavit of Ernestor Enchautegui
"N"                              Affidavit of John E. Parker
"O"                              Affidavit of Brian E. Glick
"P"                              Affidavit of Jesus Garcia
"Q"                              Affidavit of Donald Sutherland
"R"                              Affidavit of Guillermo Foster
"S"                              Affidavit of Ronald Cogmon

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

Melvin Perez,
      Plaintiff,

v.                              Case No.: 1:11-CV-180-SPM-GRJ

Michael G. Simpson, et al.,
      Defendants.
_____/

### AFFIDAVIT OF MELVIN PEREZ

STATE OF FLORIDA
COUNTY OF JACKSON

      I, Melvin Perez, do hereby depose and make the following statements under oath:

1. I am the Plaintiff in the above-captioned case.

2. I am over the age of (21) years and I am competent to make this oath.

3. I am a prisoner in the Florida Department of Corrections ("FDOC").

4. At all times set forth herein, I was housed at Mayo Correctional Institution ("MCI").

5. At all times pertinent herein, Defendants were FDOC employees acting under color of state law.

6. At all times mentioned in this affidavit, Sgt. Michael G. Simpson ("Simpson") held the rank of a correctional officer and not a sergeant.

7. Defendant Simpson was the confinement officer on the 8:00 to 4:00 p.m. shift during all times relevant herein.

8. On July 31, 2008, at 8:51 a.m. Defendant Simpson was on the first (bottom) floor of wing two when he yelled, "if Lt. Land calls me one more time about a grievance you filed against me, I'm getting you gassed."[1]

9. He further stated, "There is sixty-four other people in here and you want to be the bitch and write every thing up."[2]

---

[1] The term gas as used herein refers to the use of chemical agents by staff in reprisal.

[2] In FDOC the term write up refers to a prisoner's exercise to his right to grieve.

1

Exhibit "A"

10. Subsequently, at around 9:05 a.m. to 9:10 a.m. (the same day), Defendant Simpson came to Plaintiff's cell door (2214) and told his cellmate (Robert Anton) ("Anton"), "yeah, I think I'm moving you today."

11. Then, at 11:00 a.m. Defendant Simpson came back to Plaintiff's cell door and asked him what rule it was he wanted.

12. When Plaintiff responded that he had already obtained the rule from another officer, Defendant Simpson asked Plaintiff, "why did you write me up" (meaning why did Plaintiff file a grievance).

13. Simpson then said, "I am tired of Lt. Land calling down here about your grievances. I hate you. I have fifteen years left to retire and you are going to be back here for fifteen years."

14. Defendant Simpson continued, "I will do everything I can to f- -k you. You ain't shit, you have no rights, and you are going to get more DR's."[3]

15. "I worked back here for four years and never had a problem and in the last four days I have been called about your f- -k ass," added Defendant Simpson.

16. "You will see and I will write up the officer giving you the grievance forms," concluded Defendant Simpson.

17. Afterwards, at about 12:27 p.m. Defendant Simpson stopped at cell 2213 to pull out two prisoners (Antonio Roan and Jarrord Roberts) assigned as confinement orderlies.

18. At that time, Defendant Simpson told another officer, "that is the f- -k boy writing all those grievances."

19. Defendant Simpson then looked in Plaintiff's cell and about three seconds later the other officer came to the cell door and also looked at Plaintiff.

20. Thereafter, at 1:35 p.m. Defendant Simpson came back to Plaintiff's cell with the confinement sergeant and moved his cell mate (Anton) to cell 2215.

21. Defendant Simpson then stated, "yeah Anton you know how to do time but your roommate (Plaintiff) is going to prolong his time back here."

22. On the same day at 1:40 p.m., Defendant Simpson came back to Plaintiff's cell door and told him that he was going to take him outside of his cell to work for the Defendant, to clean the back floor railing with a toothbrush and the edge of the doors.

23. Further, Simpson said that he had some Q-tips for Plaintiff to clean the holes on the doors.

---

[3] Disciplinary reports. It is a custom at MCI to write prisoners that file grievances false DR's in reprisal for exercising their rights to grieve.

2

Exhibit "A"

24. Defendant Simpson then smiled and walked away saying, "you'll get it tomorrow."

25. Defendant Simpson never came back to pull Plaintiff out of his cell to clean.

26. The next day, on August 1, 2008 at 10:20 a.m., Defendant Fraun Hayley Winburn ("Winburn"), the DR investigating officer, came to Plaintiff's cell and served him a DR for refusing to work written by Defendant Simpson.

27. After Defendant Winburn read Plaintiff the DR she asked him if he had any evidence Plaintiff wanted to call at the hearing, had any witnesses, and if he wanted to make a statement.

28. Plaintiff requested camera evidence, documentary evidence, witnesses through both witness statements and live testimony.

29. Also, that the DR hearing be tape recorded. Plaintiff then wrote a statement in his defense.

30. When Defendant Winburn came back to Plaintiff's cell at 12:40 p.m., to pick-up the forms, she gave Plaintiff along with his statement, she reviewed Plaintiff's request and told him that he did not need all he had requested, and that most was irrelevant.

31. When Plaintiff indicated that he was requesting what he wrote on the forms, Defendant Winburn looked at Plaintiff and stated, "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!" She then walked away.

32. Winburn is married to a captain who could have assigned her to pull the trigger; she worked in confinement at least five days a week and would likely be there if Plaintiff was gassed; Plaintiff's cell mate had already been moved to another cell, which is done before a prisoner is gassed, and Winburn's threat was made in response to Plaintiff's request to present a defense to a disciplinary report that was issued in retaliation by Defendant Simpson.

33. On August 10, 2008 at 11:38 a.m., Defendant Simpson came to Plaintiff's cell and made further threats after being questioned about Plaintiff's grievances. Norman Doty DC# L25038 was Plaintiff's cell mate when Defendant Simpson came to make additional threats to Plaintiff.

34. On this same day Plaintiff submitted a direct grievance to the Secretary of FDOC of sensitive nature against Defendants Simpson and Winburn (grievance log #08-6-24329).

35. Contrary to Defendant Simpson's assertion that he did not write Plaintiff any subsequent disciplinary reports Plaintiff disputes such assertion with the following. On October 7, 2008, McCloud was working as an orderly (see Affidavit of McCloud Exhibit "F") under the supervision of Officer Simpson. While McCloud was helping serve the lunch meal on the above date, Plaintiff asked McCloud if he could get him the copy of Chapter 33-501 Florida Administrative Code.

Exhibit "A"

36. McCloud told Plaintiff that if Officer Simpson would allow him, he would bring it to Plaintiff. Plaintiff then asked Officer Simpson if it was okay for him to check out chapter 33-501 and Officer Simpson responded "Hell no, and if you write it up I'll write you're a-s up for refusing to work and get you another 60 days in confinement like I did before."

37. After this, Officer Simpson, McCloud, and another orderly went to the first floor to finish cleaning and preparing the food cart to return to food service. Officer Simpson went to his desk and began writing a DR.

38. About 20 minutes later, 2:45 -3:00 p.m., Officer Simpson returned to Plaintiff's cell door holding a DR filled out for refusing to work with Plaintiff's name on it and stated to Plaintiff, "now you little f - - king writ writer, think about what you want to do, I'll make sure you stay in disciplinary confinement." Plaintiff then agreed that he would not write a grievance against Officer Simpson for not giving him Chapter 33-501, if Officer Simpson did not turn-in the DR. Officer Simpson agreed. Here Simpson's threats deterred Plaintiff from filing a grievance.

39. After Defendant Winburn's initial threats Plaintiff filed a grievance about the incident (grievance log number 0809-212-018). Then on September 22, 2008 at around 12:30 to 12:50 p.m. Plaintiff was taken out of his cell along with his cell mate Jason L. Beene and was told to sit on the front benches of E2. There was a camera that had direct view of this area.

40. At this time, confinement staff left the wing and Defendant Winburn began threatening Plaintiff. Winburn told Plaintiff that Classification Supervisor, Mike McCray, had called her that same morning about the aforementioned grievance Plaintiff filed against her.

41. Winburn asked why did Plaintiff write her up and said, "what I told you is between me and you, you did not have to write me up."

42. Winburn added, "You meant what you wrote, I meant what I said, I hope that when that day comes, I have my finger heavy for that day."

43. Then, on April 4, 2009 at approximately 10:30 a.m., Defendant Simpson stopped Plaintiff at center gate and searched Plaintiff. Officer Robert Young was also present alone with several prisoners.

44. Defendant Simpson told Plaintiff that he would beat Plaintiff's ass if he filed a lawsuit against him and would get other officers to lock Plaintiff up (meaning place Plaintiff in confinement on a false charge) and give Plaintiff more disciplinary reports. Defendant Simpson said he was just doing his job and following orders.

4

Exhibit "A"

45. Officer Robert Young, who was present with Defendant Simpson, ultimately placed Plaintiff in confinement on a false disciplinary report, destroyed most of Plaintiff's legal work and Plaintiff's law books came up missing.

46. The foregoing factual allegations create a genuine issue of material fact and will, if proved at trial, support a judgment in my favor, as explained in the Response submitted with this declaration.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Melvin Perez DC# X11781
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445-3144

5

Exhibit "A"

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MELVIN PEREZ,

      Plaintiff,

v.                              Case No. 1:11-cv-180-SPM-GRJ

MICHAEL G. SIMPSON, et al.,

      Defendants.

_____/

### DEFENDANT WINBURN'S ANSWERS AND OBJECTIONS TO "PLAINTIFF'S SECOND REQUEST FOR ADMISSIONS TO DEFENDANT WINBURN"

Defendant Winburn, through undersigned counsel and pursuant to Rule 36, Federal Rules

of Civil Procedure, hereby responds to "Plaintiff's Second Request for Admissions to Defendant

Winburn," as follows:

**Request 1**: Admit that Defendant Winburn's husband is a Captain at Mayo Correctional

Institution ("MCI").

    **Answer**: Admit.

**Request 2**: Admit that Winburn and her husband both work at MCI.

    **Answer**: Admit.

**Request 3**: Admit that often Winburn and her husband both work on the same shift at MCI.

    **Answer**: Deny.  While on occasion my husband and I might be at the institution at the

same time, the Department's rules do not allow my husband and I to work on the same shift.

**Request 4**: Admit that Defendant Winburn regularly goes to confinement, at least 5 days a week.

    **Answer**: Admit.

1

Exhibit "B"

**Request 5**: Admit that Defendant Winburn has been in confinement when prisoners have been maced or applied and form of chemical agents.

 **Answer**: Deny. I have never been in confinement when chemical agents were applied to an inmate.

**Request 6**: Admit that Defendant Winburn has been in confinement while her husband has applied any form of chemical agents to prisoners.

 **Answer**: Deny. I have never been in confinement while my husband utilized chemical agents.

**Request 7**: Admit that her husband has instructed or ordered Defendant Winburn to apply chemical agents to prisoners while he was the officer-in-charge of that shift.

 **Answer**: Deny. My husband has never ordered me to apply chemical agents to an inmate.

**Request 8**: Admit that Defendant Winburn has applied chemical agents to prisoners while employed at MCI.

 **Answer**: Deny. I have never applied chemical agents to an inmate.

Exhibit "B"

**FRAUN WINBURN**
**Affiant**

State of Florida

County of Lafayette

The foregoing answers were acknowledged before me this _1_ , day of _November_ , 2012, by Fraun Winburn, who being duly sworn, deposes and says, that these answers to "Plaintiff's Second Request for Admissions to Defendant Winburn" are true and correct to the best of her knowledge, information, and belief.

(Signature of Notary Public)

B. DEWEY
MY COMMISSION # EE 838177
EXPIRES: September 25, 2016
Bonded Thru Budget Notary Services

_____
Print, type or stamp commissioned name of notary public
Personally Known __✓__ or Produced Identification _____ (check one)

_FIDL_
Type of Identification Produced

3

Exhibit "B"

For all objections.

Respectfully Submitted,

**PAMELA JO BONDI**
ATTORNEY GENERAL

Eric M. Neiberger
Assistant Attorney General
Florida Bar No.: 0070100
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
eric.neiberger@myfloridalegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing verified answers and objections to Plaintiff's discovery request has been furnished by U.S. Mail to: Melvin Perez, DC# X11781, Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida 33955-9701, on this 1st day of November, 2012.

Eric M. Neiberger
Assistant Attorney General

Exhibit "B"

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MELVIN PEREZ,

       Plaintiff,

v.                             Case No. 1:11-cv-180-SPM-GRJ

MICHAEL G. SIMPSON, et al.,

       Defendants.
_____/

## DEFENDANT WINBURN'S ANSWERS AND OBJECTIONS TO "PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT WINBURN"

Defendant Winburn, through undersigned counsel and pursuant to Rule 33, Federal Rules of Civil Procedure, hereby responds to "Plaintiff's first set of Interrogatories to Defendant Winburn," as follows:

**Interrogatory 1**: Please describe in as much detail as possible your job responsibilities.

       **Answer**: In August 1, 2008, I held the title of correctional officer, and I was posted as a relief officer on the 8:00-4:00 shift. I was on a special assignment as a disciplinary report (DR) coordinator. My duties included receiving DRs, preparing them by transcribing them on a computer and gathering the DR investigation forms, serving the DRs to the inmates, allowing the inmates to fill out investigation forms if he chooses, and then gathering documentary and physical evidence or witness statements, if inmates make such a request. I then combine all of that information together, enter it into the CDC system, and give the information to the classification officer.

       **Interrogatory 2**: Please describe in as much detail as possible your version of events related to the August 1, 2008, incident for which you are being sued.

Exhibit "B"

**Answer**: I served you a disciplinary report in the ordinary course of my employment.

**Interrogatory 3**: Please identify how many prisoners you have applied chemical agents to?

**Answer**: None. I have never utilized chemical agents upon an inmate.

**Interrogatory 4**: Have you ever applied chemical agents to a prisoner while your husband has

been on the same shift as officer-in-charge?

**Answer**: No.

**Interrogatory 5**: Please identify how many times you have been asked by other staff members

to apply chemical agents to prisoners?

**Answer**: None.

**Interrogatory 6**: Have you been sued before while employed in the FDOC? If so, what were the

claims against you?

**Answer**: No. Not that I am aware of.

**Interrogatory 7**: Please identify how many witnesses you will be calling at trial and

what their testimony will consist of.

**Objection**: Plaintiff seeks to discover the number of witnesses that Defendant will call at

trial, as well as the content of those witnesses' testimony. This information is not discoverable

because it is protected by the work product privilege. See Fed.R.Civ.P. 26(b)(3); Hickman v.

Taylor, 329 U.S. 495, 511–12 (1947). Rule 26(b)(3) protects from discovery "documents and

tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative," absent a showing of substantial need and undue hardship by the requesting

party. The number of witnesses Defendant Winburn will call at trial is a request for undersigned

counsel's mental impressions and work product, and is not discoverable. The content of those

witnesses' testimony is a request for statements undersigned counsel obtained or prepared in

2

Exhibit "B"

defense of this litigation, and therefore seeks undersigned counsel's work product. Plaintiff is not seeking the identities of persons who may have discoverable information so that he may then inquire of those individuals, but rather, seeks to glean information from the labor undersigned counsel has already put into this litigation. As such, information is not discoverable.


FRAUN WINBURN
**Affiant**


State of Florida

County of Lafayette

The foregoing answers were acknowledged before me this 1st , day of November , 2012, by Fraun Winburn, who being duly sworn, deposes and says, that these answers to "Plaintiff's first set of Interrogatories to Defendant Winburn" are true and correct to the best of her knowledge, information, and belief.


(Signature of Notary Public)

B. DEWEY
MY COMMISSION # EE 838177
EXPIRES: September 25, 2016
Bonded Thru Budget Notary Services


Print, type or stamp commissioned name of notary public
Personally Known ___✓___ or Produced Identification _____ (check one)

FLDL
Type of Identification Produced


3

Exhibit "B"

For all objections.

Respectfully Submitted,

**PAMELA JO BONDI**
ATTORNEY GENERAL

*Eric Neiberger*

Eric M. Neiberger
Assistant Attorney General
Florida Bar No.: 0070100
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
eric.neiberger@myfloridalegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing verified answers and objections to Plaintiff's discovery request has been furnished by U.S. Mail to: Melvin Perez, DC# X11781, Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, Florida 33955-9701, on this 1st day of November, 2012.

*Eric Neiberger*

Eric M. Neiberger
Assistant Attorney General

Exhibit "B"

DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

AUG 13 2008

TO: ☐ Warden    ☐ Assistant Warden    ☑ Secretary, Florida Department of Corrections

From: __Pérez, Melvin__    __X11781__    __Mayo CI – Main Unit__
        Last  First  Middle Initial    Number    Institution

---

`Part A – Inmate Grievance`    0816-24329

This is a grievance of sensitive nature. The basis for my direct filing is because I have already been adversely affected by filing grievances with the institution. This issue concerns a staff member, officer Simpson, M.G. (SMG05) and how he has retaliated against me for filing grievances in the form of harassment and falsifying a DR. Officer Simpson is the confinement officer in E-2 on the 8:00 a.m. – 4:00 p.m. shift. This issue has been brought to the administrations attention and no action has been taken. Instead, officer Simpson continues to threaten me with more DR's, has already given me a retaliatory DR which resulted in an additional 60 days DC confinement despite the evidence showing that the DR was in reprisal. I have filed two grievances of reprisal with the institution, one before I received the DR, and one after and I have yet to receive a response. The following are the facts that led to the DR, however, since then officer Simpson continues to threaten me. The last time being 8-10-08 at 11:38 a.m.

On 7-31-08, at 8:51 a.m. Officer Simpson was on the first floor of wing 2 E-dormitory confinement when he yelled out my name. When I came to my cell door he yelled that "if Lt. Land calls me one more time about a grievance you filed against me, I'm
    ✱ See Continuation Attached ✱

__8-10-08__    __Melvin Pérez__  __X11781__
DATE    SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____
                                                                                    #    Signature

Exhibit "C"

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: _____    Institutional Mailing Log #: _____    _____ (Received By)    106
                    (Date)

DISTRIBUTION:    INSTITUTION/FACILITY    CENTRAL OFFICE    Clo Simpson
                INMATE (2 Copies)    INMATE    Clo Winburn
                INMATE'S FILE    INMATE'S FILE - INSTITUTION/FACILITY    Capt Winberly
                INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                                                CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Revised 2/05)

# Continuation

getting you gassed." He further stated, "there is 64 other people in here and you want to be the bitch to write everything up." At around 9:05 a.m. — 9:10 a.m. Officer Simpson came to my cell door and told my roommate, "yeah, I think I'm moving you today."

At 11:00 a.m. officer Simpson came back to my cell door and told me what rule was it that I wanted. When I told him that I had already got the rule from another officer he asked me, "why did you write me up. I am tired of Lt. Land calling down here about your grievances, I hate you. I have 15 years left to retire and you are going to be back here for 15 years. I will do everything I can to f--k you. You ain't shit, you have no rights and you are going to get more DR's. I worked back here for four years and never had a problem and in the last four days I have been called about your f--k ass. You will see and I will write up the officer giving you the grievance forms."

At about 12:27 p.m., officer Simpson stopped at cell 2213 to pull out two prisoners assigned as confinement workers.

Exhibit "C"                    -2-

# Continuation

At that time, officer Simpson told another officer " that is that f--k boy writing all those grievances." Officer Simpson then looked in my cell and about three seconds later the officer with him came to my cell door.

At 1:35 p.m., officer Simpson came back to my cell with the confinement sergeant and moved my cell mate to another cell (2215). Officer Simpson then stated, "yeah Anton you know how to do time but your roommate is going to prolong his time back here."

At 1:40 p.m., officer Simpson came back to my cell door and told me he was going to pull me outside my confinement cell to work so I can clean the back floor railing with a toothbrush and the edge of the doors. Further, that he had some Q-tips for me to clean the holes on the doors. Officer Simpson then smiled and walked away saying "you'll get it tomorrow." Officer Simpson never came back to pull me out to clean.

The next day, on 8-1-08 at 10:20 a.m., officer F. Winburn came to my cell and

Exhibit "C"                    - 3 -

# Continuation

served me with a DR. The DR was written by officer Simpson for refusing to work and stated:

At approximately 1335 hrs. on July 31, 2008, while assigned as administrative confinement housing officer, I informed inmate Perez, Melvin DC # X11781 which is [sic] houses in E 2214 U that he had been approved for a confinement orderly and that he would be coming out today to clean the wing. Inmate Perez stated to me, "I ain't gotta come out of [sic] I don't want to." I informed inmate Perez that his refusing to come out would result in disciplinary action, he stated, "we'll see." Inmate Perez will remain in disciplinary confinement pending further disposition of this report for 9-16 refusing to work. The shift OIC was notified of this incident and authorized this report to be written.

After reading the DR Ms. Winburn asked me if I had any evidence I wanted to call at the hearing, had any witnesses

# Continuation

and if I wanted to make a statement.
I requested camera evidence, documentary
evidence, witnesses both through witness
statements and live testimony. Also that
the DR hearing be tape recorded and I
wrote a statement in my defense. When
Ms. Winburn came back to pick-up the
forms she gave me along with my statement,
after reviewing my request, she told me
that I did not need all I had requested
and most was all irrelevant. When I
indicated that I was requesting what
I wrote on the forms, she looked at
me and stated, "I hope that when
they gas you I get to pull the trigger
for making me do all this work, because
I have to get some relief from this." She
then walked away.

On 8-7-08, I was called by captain
Gloria C. Wimberley and Debra Livingston
for a hearing in the instant DR. After
asking me how did I plea, I was allowed
to make a verbal statement. When I began
my statement I informed the DR team
that officer Simpson never ordered me
to work nor did I refuse. I also
attempted to explain what took place
on that date and how officer Simpson

# Continuation

was retaliating against me for filing grievances against the conditions of the confinement unit. Further, that numerous witnesses will support the threats he made on that day to give me DR's in reprisal. Captain Wimberley then ordered me to shut-up and not say one more word because if I said anything else, she would give me more DR's. She then stated, "I do not care who you think you are or who your people are." She then ordered me outside the room. When I came back, captain Wimberley told me she was sentencing me to 60 days in disciplinary confinement and if I did not like it, appeal it to the warden.

During the hearing the evidence clearly supported my claim that the DR was written in retaliation. However, the team did not consider these statements written by other prisoners that saw officer Simpson's actions. The team further failed to call live testimony of any of my requested witnesses. In addition, before I exited the room I provided a written statement showing how several prisoners saw Ms. Winburn giving officer

Continuation

Simpson my statement and statements of my witnesses and how he had already retaliated against them. In this statement I named either cell numbers and bunk or the name of prisoners who saw this and asked that the team call them to the hearing because their testimony will support my claim. The team failed to do so.

This DR was written in retaliation for filing grievances. This is a clear violation to my First Amendment rights and similar provisions under Art. I, section 5, Fla. Const. The above facts also show how staff failed to correct this problem and instead sentenced me to 60 days in disciplinary confinement despite the evidence supporting my claim.

I am respectfully requesting that you take action in this matter and order DR Log # 212-081283 expunged from my institutional file, remove officer Simpson from his confinement post, and that all retaliation against me stop.

Exhibit "C"              -7-

Continuation

   Under penalties of perjury, I hereby
declare that the facts set-forth in this
complaint are true and correct.

                    Respectfully Submitted,

                    Melvin Perez
                    MELVIN PÉREZ Dc #
                    X11781

Handwritten copies
provided to:

FDLE
Office of the Attorney General
Governor Charles J. Crist, Jr.
Florida Prisoners' Legal Aid Organization, Inc.

Exhibit "C"              - 8 -

MAILED / FILED
WITH AGENCY CLERK

AUG 2 8 2008

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| PEREZ, MELVIN | X11781 | 08-6-24329 | MAYO C.I. | E2214U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your appeal has been reviewed and evaluated. The issue of your complaint has been referred to the investigative section of the Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling.

As action has been initiated, you may consider your appeal approved from that standpoint.

M. SOLANO

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/28/08 DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

Exhibit "C"

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

RECEIVED
SEP 26 2008

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCES

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☐ Warden    ☐ Assistant Warden    ☑ Secretary, Florida Department of Corrections

From: __Pérez, Melvin__    __X11781__    __Mayo CI - Main Unit__
    Last   First   Middle Initial    Number    Institution

Part A – Inmate Grievance    086-28642

I appeal the attached response denying my institutional DR appeal. The response provided is clearly in conflict with DOC rules, clearly established decisional law, and my constitutional rights. For the reasons outlined hereunder this DR appeal must be granted. First, Mr. McCray failed to respond to all the issues raised in my DR appeal. His justification for doing so is that I mentioned staff misconduct in addition to my argument regarding the DR. However, this does not justify not answering all my issues, because the facts I provided are to show all the events leading up to the writing of the DR. Second, the response provided clearly shows that the review I received at the institution was impartial. Neither Mr. McCray nor Ms. Humphries interviewed any of my witnesses, reviewed the witness statements, camera evidence or any other evidence that support my claim. The truth is that Mayo CI has made a practice of retaliation against prisoners that file grievances. Mayo administrators are well aware of this problem because they have participated in such acts, and have made a practice of covering-up their wrongdoing and those of their fellow officers. Third, the administration was aware of this problem because I wrote both requests and grievances that were responded by Mr. McCray, Capt. Chambers, and Asst. Warden Mock. These were written before this DR was issued. All three ignored my claims of reprisal. Fourth, Mr. McCray claims that the investigative

__9-22-08__ DATE    **\* See Continuation \***    __Melvin P.__ __X11781__ SIGNATURE OF GRIEVANT AND D.C. #

\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____
                                                                        #    Signature

05B

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Chapter 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the complaint, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: __9/26/08__ Institutional Mailing Log #:_____    __M Solano__
          (Date)    (Received By)

Exhibit "D"

DISTRIBUTION:
INSTITUTION/FACILITY    CENTRAL OFFICE
INMATE (2 Copies)    INMATE
INMATE'S FILE    INMATE'S FILE - INSTITUTION/FACILITY
INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                                  CENTRAL OFFICE GRIEVANCE FILE

CO Winbury
10/1/7/21/08

DC1-303 (Revised 2/05)

Document in IRIS (Inmate Records Imaging System)

## Continuation

documents I requested are not available for
review by the charged inmate. This denial of
requested documentary evidence hindered my
ability to marshall evidence and present a
defense to the DR charges. It is clear
that in order to prepare a defense I
would have to examine the witness
statements of all the witnesses and the
summary of the investigative report written
by the investigating officer. Thus this denial
violated my due process rights. Fifth, Mr.
McCray argues that calling live witnesses is
the purview of the DR team not the charged
inmate. However, the point that he failed
to address is that DOC has made a blanket
policy against live witnesses, something that
is contrary to law. Sixth, Mr. McCray
argues that no rule allows for tape
recordings during DR hearings. This is
because DOC has failed to establish a rule
in accordance with federal decisional law
mandating tape recordings during DR hearings.
~~This is because DOC has failed to establish a~~
~~rule in accordance with federal decisional law~~
~~mandating tape recordings during DR hearings.~~
Seventh, despite DOC rules requiring
prisoners to be excluded from the hearing
during the taking of evidence, this practice
is both in conflict with the statute and case
law.

-2-

Exhibit "D"

**Document in IRIS (Inmate Records Imaging System)**

## <u>Continuation</u>

Eighth, Mr. McCray also states that Ms. Winburn denies my allegation that she threatened me; however, today (9-22-08 at around 12:30 - 12:50 p.m.) she made the same threats. My roommate Jason L. Beene was present when she threatened me. This is also seen on camera. Ninth, Mr. McCray responded that all my witnesses were called as I requested. This is unsupported by the DR record of the proceedings had. I requested over 70 witnesses which were not called. This response shows that Mr. McCray did not review my witness list when responding to my DR appeal. Tenth, Mr. McCray failed to review all the facts that show where the DR was written in reprisal. From the requests and grievances I filed, prior to the DR, my roommate being moved for no reason other than to eliminate a witness, the witness statements supporting my claim, and all the facts in my DR appeal as well as the grievances I filed about this incident. Had he reviewed all of the above, there is only one conclusion he could have made, the DR was written in reprisal.

Similarly, the response failed to address all the issues raised in my DR appeal. According to recent case law, all allegations

-3-

Exhibit "D"

## Continuation

not addressed are admitted as true. The preponderance of evidence before the team clearly showed that the instant DR was written in reprisal and in violation of my rights. Accordingly, for these and the reasons set-forth in my initial DR appeal, I seek that this appeal be granted as well as the relief sought at the institution.

Respectfully Submitted,

MELVIN PÉREZ X11781

-4-

Exhibit "D"

MAILED / FILED
WITH AGENCY CLERK

OCT 0 8 2008

Department of Corrections
Bureau of Inmate Grievance Appeals

PART B - RESPONSE

| PEREZ, MELVIN | X11781 | 08-6-28642 | MAYO C.I. | E2216L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative appeal has been received in non-compliance. This office has previously addressed this issue in appeal log #08-6-26216. We will not redress this issue or your allegations, as there is no provision in the grievance process to appeal a decision already rendered by this office.

Furthermore, a copy of your grievance has been forwarded to the Inspector General's Office for review.

Your request for administrative appeal is returned without action.

M. SOLANO

|  |  | 10/6/08 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

Exhibit "D"

## IN THE UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT
## TALLAHASSEE DIVISION

**MELVIN PEREZ, DC# X11781,**
     Plaintiff,

vs.                  CASE NO.: **1:11-cv-00180-SPM-GRJ**

**MARTHA HUMPHRIES, et al.,**
     Defendants.

_____ _____ /

## AFFIDAVIT OF JARRORD ROBERTS

I, **JARRORD ROBERTS**, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1.     I am the affiant in this cause.

2.     I am over twenty-one (21) years of age.

3.     I am competent to make this oath.

4.     I have personal, first-hand knowledge of the facts stated herein.

5.     On July 31, 08, I was in the same confinement unit where Melvin Perez was housed.  My cell location E-2213 was the next cell to Perez who was in E-2214.

6.     On the above date, I was taken out of my cell by officer Simpson to work as a confinement orderly along with my cell mate Antonio Roan.

7.     After Roan and I finished serving the lunch meal we started cleaning the confinement wing.

Exhibit " E "

8.     While we were cleaning Officer Simpson was at his desk looking at a list of DR's and how much time they carry. While looking at the list Officer Simpson told Roan and I, "let me see what DR I should write him, he wants to file grievances against me, I'll show him I can write too," referring to Perez.

9.     I got a good one here, refusing to work, said Officer Simpson. He then began writing a DR against Perez for refusing to work. "I am going to teach that mother f--ker how we do it at Mayo, and if any of you two say anything or write a statement against me, I will f--k you too, said Officer Simpson.

10.     Officer Simpson never asked Perez to come out of his cell nor did he order Perez to do so before he wrote the DR. Officer Simpson came directly to my cell so my cell mate and I could serve lunch and clean up the wing, as he did every day he worked.

11.     On August 4, 2008, Officer Winburn came to my cell and asked me if I wanted to make a statement. I signed a voluntary refusal because I did not want to stay in confinement for longer than I had been sentenced to.

12.     However, Antonio Roan, my cell mate, made a statement. When Officer Simpson read his statement he came to my cell and told Roan "you don't bite the hand that feeds you." Officer Simpson then fired Roan and I as orderlies.

13.     Officer Simpson came back to my cell several times that same day and would call Roan to the cell door and tell him "you ain't sh-t," "you fu--ed up, why

Exhibit "E"                                        2

did you write a statement against me. I work you every day, feed you and you f--k me over for that f--king piece of sh-t that wants to file grievances against me," referring to Perez. Officer Simpson would stop talking and not look towards Perez's cell to see if Perez was on his cell door.

14.    Had it not been for the reprisal that would follow my statement, I would have written a statement on behalf of Perez.

15.    I did hear Officer Simpson threaten Perez with writing him a DR for filing grievances against Officer Simpson.

16.    I did hear Officer Simpson tell Perez that he will gas him if Lt. Land called one more time about a grievance.

17.    Officer Simpson came to Perez's cell several times that day to curse at Perez and threaten him with DR's for filing grievances.

18.    I am willing to testify in any court proceedings concerning this matter.

**UNDER THE PENALTY OF PERJURY,** I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 3rd day of January, 2009 at Mayo, Florida.

Jarford Roberts, Affiant, DC# U23431
Mayo Correctional Institution
8784 W. US 27
Mayo, FL  32066

Exhibit "E"

3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**Melvin Perez,**
      **Plaintiff,**

**v.**                                                      **Case No.: 1:11-CV-180-SPM-GRJ**

**Michael G. Simpson, et al.,**
      **Defendants.**

_____/

## AFFIDAVIT OF MICHAEL A. McCLOUD

    I, Michael A. McCloud, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. I was a confinement orderly from around September 19, 2008, to October 19, 2008, in the same confinement unit where Melvin Perez was housed.

6. On October 7, 2008, I was working as an orderly under the supervision of Officer Simpson.

1

Exhibit "F"

7.    While I was helping serve the lunch meal on the above date, prisoner Melvin Pérez asked me if I could get him the copy of chapter 33-501 Florida Administrative Code.

8.    I told Pérez that if Officer Simpson would allow me, I would bring it to him. Pérez then asked Officer Simpson if it was ok for him to check out chapter 33-501 and Officer Simpson responded "Hell no, and if you write it up I'll write you're a-s up for refusing to work and get you another 60 days in confinement like I did before."

9.    After this, Officer Simpson, I and another orderly went to the first floor to finish cleaning and preparing the food cart to return to food service. Officer Simpson went to his desk and began writing a DR.

10.    Officer Simpson told me and the other orderly that he was writing Pérez a DR for refusing to work before Pérez wrote him up.

11.    About 20 minutes later, 2:45 – 3:00 p.m., Officer Simpson returned to Pérez's cell door holding a DR filled out for refusing to work with Pérez's name on it and stated to Pérez, "now you little f- - king writ writer, think about what you want to do, I'll make sure you stay in disciplinary confinement."

12.    Pérez then agreed that he would not write a grievance against Officer Simpson for not giving him chapter 33-501 if Officer Simpson did not turn-in the DR.

Exhibit "F"                                    2

13.    After Officer Simpson finished talking to Pérez he told me and the other orderly, "that's how I handle them f - -king writ writers."

14.    I am willing to testify in any court proceedings concerning this matter.

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 23rd day of February 2009.

Michael McCloud, Affiant
DC# 787810
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL 32066

Exhibit "F"                                    3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**Melvin Perez,**
    **Plaintiff,**

**v.**                                  **Case No.: 1:11-CV-180-SPM-GRJ**

**Michael G. Simpson, et al.,**
    **Defendants.**

_____/

### <u>AFFIDAVIT OF JEFFERY SHERLOCK</u>

I, Jeffery Sherlock, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. On July 31, 2008, while housed in E-Dormitory confinement unit I was assigned to cell 2208 Lower.

6. At around 8:30 – 9:00 a.m. (July 31, 2008) I was awaken by someone yelling. When I looked out my cell door window I saw Officer Simpson yelling at Melvin Perez and throwing his hands in the air.

1

Exhibit "G"

7.     Officer Simpson told Pérez that he would gas Pérez if Lt. Land called one more time about a grievance he filed against Officer Simpson.

8.     He also told Pérez that he hated him and he was going to f - - k him every time he had a chance and he was going to give him more DR's for writing grievances.

9.     Officer Simpson did this several times that same day and later that day Officer Simpson moved Pérez's cellmate to another cell.

10.    During the investigation process of the DR, I was not asked to make a statement by the DR investigator.  Had I been interviewed, I would have wrote the above facts in said statement.

11.    I am willing to testify in any court proceeding in this matter if called upon by this Court.

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 19th day of December 2008.


Jeffrey Sherlock, Affiant
DC# 940319
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL  32066

Exhibit "G"

2

## IN THE UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT
## TALLAHASSEE DIVISION

**MELVIN PEREZ, DC# X11781,**
     Plaintiff,

vs.                    CASE NO.: **1:11-cv-00180-SPM-GRJ**

**MARTHA HUMPHRIES, et al.,**
     Defendants.

_____/

## AFFIDAVIT OF ROBERT ANTON

I, Robert Anton, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1.     I am the affiant in this cause.

2.     I am over twenty-one (21) years of age.

3.     I am competent to make this oath.

4.     I have personal, first-hand knowledge of the facts stated herein.

5.     On August 4, 2008, Officer F. Winburn came to my cell door and asked me if I wanted to make a statement on behalf of Melvin Pérez.

6.     I signed a voluntary refusal at the time. I did so because when I was moved out of the cell with Mr. Pérez, Office Simpson told me that he would f - - k me if I wrote a statement against him. I had a 30-day deadline to file a Federal

Exhibit "H"

Habeas Corpus petition and could not afford to do any more time in confinement for writing a statement.

7.     Had I not been threatened by Officer Simpson, I would have wrote the following statement.

8.     Between July 27-28, 2008, I went to the confinement recreation yard while housed in confinement. While I was in the recreation yard Officer Simpson asked me about Mr. Pérez. I told Officer Simpson that Mr. Pérez was a good cellmate. He then responded, "Pérez is no good. He likes writing grievances, I'm moving him to another wing."

9.     On July 31, 2008, at around 8:45 – 9:00 a.m., I was awaken by someone yelling. When I got out of my bunk I saw Pérez in front of the cell door and Officer Simpson was yelling at him.

10.     Officer Simpson told Pérez that he was tired of Lieutenant Land calling him about Pérez's grievances and that he would gas him (apply chemical agents), if Lt. Land called one more time.

11.     Officer Simpson went on with more threats and profanity until he got tired.

12.     About 10-15 minutes after the first incident, Officer Simpson came back and told me that he was going to move me to another cell.

Exhibit "H"

13.     About two hours later Officer Simpson came back to my cell door and began talking to Pérez.  During this conversation, Officer Simpson began yelling at Pérez and told him that he was going to have Pérez in confinement for 15 years for writing grievances against him.  That he would f - - k Pérez every time he (Officer Simpson) had a chance.  That Pérez had no rights, that he was s h – t, and he was getting more DR's for writing grievances.

14.     Officer Simpson came back at around 1:30 – 1:45 p.m. and moved me to another cell.  While he was moving me he told me that I knew how to do time, but that my roommate (Pérez) was going to prolong his time in confinement.

15.     Further, Officer Simpson told me that Pérez was a piece of sh*t and he was going f**k Pérez up, and that if I wrote a statement against him he would f**k me also.  This is the reason why I did not write the statement when Officer Winburn came to investigate the DR.

16.     I am willing to testify in any court proceedings concerning this matter.

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 24th day of August 2010.

Robert Anton, Affiant
DC# 494326
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL  32066

Exhibit "H"

3

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

Melvin Perez,
    Plaintiff,

v.                      Case No.: 1:11-CV-180-SPM-GRJ

Michael G. Simpson, et al.,
    Defendants.
_____/

## AFFIDAVIT OF FELIX ABREU

I, Felix Abreu, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. On August 7, 2008, after Mr. Perez went to disciplinary report court Ms. Winburn came to my cell and asked me if I wanted to write a witness statement on behalf of Melvin Perez.

6. I responded by asking Ms. Winburn if there would be any repercussions against me for writing a statement.

1

Exhibit "I"

7.     Ms. Winburn responded that there would be no repercussions from her, but there will be from the other officers' working the confinement unit.  She then told me, "just sign a voluntary refusal and you will be ok."

8.     Had it not been for the repercussions that will follow my statement, I would have wrote a statement to the following facts.

9.     On July 31, 2008, I was housed in E-Dormitory, wing two confinement unit on the top floor almost across from Pérez's cell.

10.     During the morning hours from 8:30 a.m. – 12:00 p.m. Officer Simpson came by Pérez's cell and threatened Pérez with writing him more DR's for filing grievances against him.  This happened about two or three times that morning.

11.     Officer Simpson also threatened Pérez with gas (chemical agents) if Lt. Land called one more time about a grievance Pérez wrote.  I also remember that Pérez's cellmate was moved to another cell after lunch.  Earlier that morning Officer Simpson told his cellmate that he was going to move him out.

12.     I would have wrote this statement if no reprisal was to be taken against me.

13.     I am willing to testify in any court proceedings concerning this matter.

Exhibit "I"

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 14th day of August 2009.

_Felix Abreu_

Felix Abreu, Affiant
DC# 198400
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL 32066

Exhibit "I"

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**Melvin Perez,**
  **Plaintiff,**

v.                                    **Case No.: 1:11-CV-180-SPM-GRJ**

**Michael G. Simpson, et al.,**
  **Defendants.**
_____/

## AFFIDAVIT OF MARK A. KOHUT

**STATE OF FLORIDA**         )
                             )
**COUNTY OF LAYFAYETTE**     )

I, **MARK A. KOHUT**, being hereby sworn according to law, depose and

state:

1. I am not a party in the above-entitled and numbered cause of action, am

over the age of twenty-one (21) years, and am competent to give testimony in this

cause.

2. At all times material herein, I was an inmate in the Florida Department of

Corrections and housed at the Mayo Correctional Institution. My inmate I.D.

number is **527745**.

3. On July 31, 2008, I was housed in E-Dorm, Wing 2, Cell 2111

(hereinafter "E2111"), as an administrative confinement inmate.

1

Exhibit "J"

4. On July 31, 2008, Melvin Perez was housed in E-Dorm, Wing 2, Cell 2214 (hereinafter "E2214"), directly across from my cell on top tier.

5. From my cell, 2111, I was able to hear and observe everything that took place outside of cell E2214.

6. On July 31, 2008, at no less than four (4) different times did I witness a Correctional Officer stop at cell E2214 and inform Mr. Perez that he [the correctional officer] was going to issue Mr. Perez as many disciplinary reports as he could, even if he had to lie, because Mr. Perez had written numerous grievances on the correctional officers assigned to E-Dorm, Wing 2.

7. On July 30, 2008, I observed Mr. Perez submit numerous grievance for processing.

8. I am willing to testify at trial in this matter.

9. These facts are true, correct and within my personal knowledge.

Further Affiant Sayeth Not

**UNDER PENALTY OF PERJURY** I declare that I have read the foregoing and the facts in it are true.

August 11, 2008
_____
Date

_____
Mark A. Kohut, DC# 527745
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL 32066

Exhibit "J"

2

## AFFIDAVIT DAVID CHOPPA

I, David Choppa, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

On October 20, 2008, I was housed in the same cell with Melvin Pérez while in disciplinary confinement. At 9:58 a.m., Sgt. Bevis and Officer Simpson came to my cell and told me to get dressed because the Doctor wanted to see me. When all three of us got to the foyer, Sgt. Bevis asked me how I was doing. I replied that, "I would be better when I got out of confinement." Officer Simpson in response to my statement told me, "You could get out today and have your choice of Dorm to live in, if you beat your roommate's ass." I then told Officer Simpson, "I take it that you don't like him much." Officer Simpson stated that, "inmate Pérez wrote me up." Nurse Smith was also present when Officer Simpson said this. I did not act on this remark. I am willing to testify to these facts if called upon by the court.

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this 18th day of December 2008.

David Choppa
Affiant
Mayo Correctional Institution
8784 West U.S. Hwy. 27
Mayo, FL 32066

Exhibit "K"

1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**MELVIN PÉREZ,**
　　　　Plaintiff,

vs.　　　　　　　　　　　　　Case No.: 1:11-cv-00180-SPM-GRJ

**MARTHA HUMPHRIES, et al.,**
　　　　Defendants.
_____/

## AFFIDAVIT OF DONALD D'ANGELO

I, DONALD D'ANGELO, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. On April 4, 2009, at approximately 10:30 a.m. I was trying to obtain a pass from Officer Robert Young at center gate to go to the general library when I heard Sgt. Michael G. Simpson and Officer Young talking to Melvin Pérez.

6. Sgt. Simpson told Pérez that he would beat him up (assault him) if he filed a lawsuit against him because he was just doing his job when he wrote Pérez

Exhibit "L"

a disciplinary report while Pérez was inside confinement.

7. Pérez asked Sgt. Simpson how was he doing his job by writing him a DR in reprisal for filing grievances. Simpson then said, "I was just following orders."

8. Sgt. Simpson also told Pérez that it was not in his best interest to pursue suit because not only was he going to beat Pérez's a-s but he will get other guards to lock him up (place him in confinement), gas him (apply chemical agents) and Simpson and other guards would write Pérez more DRs.

9. When Pérez walked off to the law library I overheard Sgt. Simpson tell Officer Young that Lt. Marc Land had called Simpson and told him to write Pérez a DR for writing grievances while in confinement, that the DR should stop Pérez from writing grievances.

10. I am willing to testify to these matters in any hearing or court of law if called upon to do so.

**Pursuant to 28 U.S.C. §1746, I declare UNDER PENALTIES OF PERJURY, that I have read the foregoing and the facts in it are true.**

Executed at Mayo Correctional Institution on this 6th day of September 2011.

_Don D'Angelo_
Donald D'Aneglo
DC# 140700
Mayo Correctional Institution
8784 W. US 27
Mayo, FL 32066

Exhibit "L"

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**MELVIN PÉREZ,**
      Plaintiff,

vs.                            Case No.: 1:11-cv-00180-SPM-GRJ

**MARTHA HUMPHRIES, et al.,**
      Defendants.
_____/

## <u>AFFIDAVIT OF ERNESTOR ENCHAUTEGUI</u>

I, ERNESTOR ENCHAUTEGUI, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. On June 16, 2009, at approximately 9:40 a.m. Sgt. Edward Wilton and Officer Robert Young were inside Melvin Pérez's cell (D-3104) searching his footlocker.

Exhibit "M"

6. When these two guards went inside his cell Pérez called me to his cell. When I arrived next to the cell door I overheard Sgt. Wilton tell Officer Young that Lt. Land had ordered Wilton that Pérez had to be locked up (placed in confinement) for writing grievances and helping other prisoners on the wing to write grievances.

7. At that point Officer Young smiled and told Sgt. Wilton that he would write the disciplinary report.

8. Next, Pérez was told to go to the foyer where he was then taken to confinement.

9. I am willing to testify to these matters in any hearing or court of law if called upon to do so.

**Pursuant to 28 U.S.C. §1746, I declare UNDER PENALTIES OF PERJURY, that I have read the foregoing and the facts in it are true.**

Executed at Mayo Correctional Institution on this 6th day of September 2011.

*E. Enchautegui*

Ernestor Enchautegui
DC# 583641
Mayo Correctional Institution
8784 W. US 27
Mayo, FL 32066

Exhibit "M"

# GENERAL AFFIDAVIT

I, _John E. Parker_, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

On Tuesday November 18th 2008; as the shift 4 to 12 approached; E2 confinement wing. 8 to 4 shift confinement S.G.Y Beevas — confinement officer M. Simpson — officer J. King — officer . — officer . Roberts, entered no rushed into E 2201 cell; i then heard Fleash being severly bounded, next i heard Fleash hit the Floor, then i heard cuff up several times, next i heard rape about four times, then i heard don't cry now, shut up nigger. confinement officer M. Simpson threaten too F that same person thirty minutes earlier. That person was mardic Allen

---

**Under penalties of perjury**, I declare that I have read the foregoing ___ page affidavit and the facts stated in it are true and correct in accordance with section 92.525, Florida Statute and 28 U.S.C. 1746.

Executed on this _18th_ day of _November_ 2008.

John E. Parker
(SIGNATURE OF AFFIANT)
John E. Parker
Mayo Correction
8784 West U.S. Hwy
(ADDRESS OF AFFIANT)
27 Mayo, FL 32066

Exhibit "N"

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**MELVIN PÉREZ,**
          Plaintiff,


vs.                                   Case No.: 1:11-cv-00180-SPM-GRJ


**MARTHA HUMPHRIES, et al.,**
          Defendants.
_____/

## AFFIDAVIT OF BRIAN E. GLICK

I, BRIAN E. GLICK, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. I am and have been an inmate at Mayo Correctional Institution from April of 2006 until present.

6. During the summer of 2009, I was placed in disciplinary confinement and given several disciplinary reports (DRs) as retaliation for filing inmate grievances.

Exhibit "O"

7. The policy of using confinement and DRs to intimidate inmates is and has been rampant at Mayo Correctional Institution, and it is well known by most inmates that writing grievances is a sure way to go to confinement.

8. I am willing to testify to these matters in any hearing or court of law if called upon to do so.

**Pursuant to 28 U.S.C. §1746, I declare UNDER PENALTIES OF PERJURY, that I have read the foregoing and the facts in it are true.**

Executed at Mayo Correctional Institution on this 6th day of September 2011.

Brian E. Glick
DC# R45761
Mayo Correctional Institution
8784 W. US 27
Mayo, FL 32066

Exhibit "D"

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT
## TALLAHASSEE DIVISION

**MELVIN PEREZ,**
    Plaintiff,

vs.                    CASE NO.: **1:11-cv-00180-SPM-GRJ**

**MARTHA HUMPHRIES,**
**et al.,**
    Defendants.

_____/ .

### AFFIDAVIT OF JESUS GARCIA

    I, **JESUS GARCIA,** do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

    1.  I am the Affiant in this cause.

    2.  I am over twenty-one (21) years of age.

    3.  I am competent to make this oath.

    4.  I have personal, first-hand knowledge of the facts stated herein.

    5.  On December 9, 2008, December 12, 2008 and December 13, 2008, I filed a grievance against Officer Richardson working at Mayo Correctional Institution, D-Dormitory on the 8:00 am to 4:00 pm shift.

    6.  On December 15, 2008, at around 11:45 am – 12:00 pm, Sgt. Kimbril and another officer conducted a count where all prisoners were locked in their cell.

Exhibit "P"

7.   After count, Sgt. Kimbril ordered Officer Richardson in the control room to open all cell doors and called every prisoner on the wing to come to their cell door (about 88).

8.   Sgt. Kimbril then announced that there were some prisoners filing grievances on the wing against Officer Richardson and that he could take care of them or he could leave it up to the prisoners on the wing.

9.   Sgt. Kimbril further said that if the grievances kept being filed, he would lock up half of the wing in one week (placed in to confinement).  Also, that he already had locked up Inmate Shamir Suber for writing grievances against Officer Richardson.

10.  I am willing to testify to these facts if called to do so by this Court in any proceedings.

**UNDER PENALTY OF PERJURY**, I declare that I have read the foregoing affidavit and the facts in it are true and correct.

Executed this 27th day of August, 2010.


*Jesus Garcia*
Jesus Garcia, Affiant
DC# B03698
Mayo Correctional Institution
8784 W. US 27
Mayo, FL  32066

Exhibit "P"                                    Page 2 of 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT
## TALLAHASSEE DIVISION

**MELVIN PEREZ,**
        Plaintiff,

vs.                                  CASE NO.: **1:11-cv-00180-SPM-GRJ**

**MARTHA HUMPHRIES,**
**et al.,**
        Defendants.
_____/

## AFFIDAVIT OF DONALD SUTHERLAND

I, Donald Sutherland, do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1.    I am the affiant in this cause.

2.    I am over twenty-one (21) years of age.

3.    I am competent to make this oath.

4.    I have personal, first-hand knowledge of the facts stated herein.

5.    Between 12-10-08 and 12-16-08, I filed several grievances against Officer T. Richardson working in D-Dormitory at Mayo Correctional Institution.

6.    On 12-17-08, Officer Dennis working on the 4:00 – 12:00 a.m. shift came to search my cell.  During this search he made comments about me writing grievances against Officer Richardson and said that the search was ordered by higher officials.

Exhibit "Q"

7.   On 12-18-08, at around 6:40 p.m., Sgt. Stephenson and Officer Dennis conducted another search.   During this second search, these officers destroyed and confiscated my mattress.

8.   They also did an un-clothed search.

9.   Around 8:30 p.m. the same day.  I approached the Officers' station and asked about a mattress and the Officers told me that they will locate one for me.

10.   At 10:30 p.m. the same day, during master count, I again asked Officer Dennis about a mattress.

11.   He responded, "I forgot," and walked away laughing while saying that, "you have to wait until the morning."

12.   I spent that night sleeping on a steel bunk without a mattress at cold temperatures.

13.   The next day (12-19-08), I declared a psychological emergency after breakfast and was escorted to the Mental Health Department by an officer.

14.   I told Doctor Lowery what took place and she filed an incident report about the incident and arranged for me to go to the Laundry Building to get a mattress.

15.   The laundry supervisor, Sgt. Hart, called the dormitory officer to verify that I did not have a mattress.  They did so and I was issued a mattress.

Exhibit "Q"

16.     That same day (12-19-08), at around 4:30 p.m. Officer Dennis called me and told me to report to Sgt. Stephenson.  When I did the sergeant apologized to me and asked me if I was going to file a grievance against him.  I did not respond.

17.     That same night I went to the Officers' station to request medication. Sgt. Stephenson again asked me if I was going to file a grievance against him.  I did not respond.

18.     Major Hendricks called me on 12-21-08 to ask me what happened.  I told him the above facts and he responded that he will address the issue.

19.     The above incident took place as a result of the grievances I filed against Mayo Correctional Institution staff.

20.     My cellmate, Richard O'Brien, was present during both searches.

21.     I am willing to testify to these facts if called to do so by this Court in any proceedings.

**UNDER  PENALTY  OF  PERJURY**, I  declare  that  I  have  read  the foregoing affidavit and the facts stated in it are true and correct.

Executed this _20_ day of December 2008.

Donald Sutherland, Affiant
DC# 511458
Mayo Correctional Institution
8784 West U.S. Hwy.  27
Mayo, FL  32066

Exhibit "Q"

3

## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**MELVIN PEREZ,**
  Plaintiff,

v.                                    CASE NO.: _____

**MARTHA HUMPHRIES, et al.,**
  Defendant.
_____/

## AFFIDAVIT OF GUILLERMO FOSTER

I, **GUILLERMO FOSTER**, being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C. §1746:

1.   On or about January 2008, I submitted a grievance at Mayo Correctional Institution ("MCI") regarding the implementation of new institutional operations that affected my rights to access the law library, and how prisoners at MCI were being deprived of the 25 hours of law library access mandated by DOC rules.

2.   I also grieved about not receiving sufficient recreation time.

3.   I never received a response to my grievance.

4.   Consequently, I wrote a letter on March 2008, to the Office of the Regional Director of Institutions, Region II, outlining the problems prisoners had at MCI. Two weeks later I received a response from the Regional Director.

5.   In April 2008, I submitted a reply to the response written by the Regional Director.

Exhibit "R"

6.   Subsequently, on April 10, 2008, Warden Martha Humphries and Assistant Warden Freddie Mock called me to the warden's office regarding my reply.

7.   In the warden's office Humphries and Mock threatened to place me in confinement for writing the complaint to the Regional Director.   Warden Humphries also told me that if I wrote another letter to the Regional Director she would have me place in confinement.

8.   At that time, I was assigned to work in the inmate barber shop as a barber and had worked there for 2½ years without any problems.

9.   Next, on April 15, 2008, I was fired from my work assignment as a barber and place on inside grounds as a punishment for filing my complaint to the Regional Director.

10.   When I seen my supervisor, Sgt. Lawson, I asked him why was my work assignment charged.  Sgt. Lawson responded that the warden (Humphries) ordered him to remove me from the barber shop.

11.   Thereafter, I submitted a grievance of reprisal under an exception in 33-103 (F.A.C.) that allows prisoners to file directly with the Secretary of DOC a grievance of sensitive nature.

12.   M. Solano returned my grievance without processing it stating that the grievance was not of sensitive nature and should be addressed with the institution.

13.   Solano did not investigate my claim of reprisal.

Exhibit "R"

2

14. Once again, I filed another grievance this time an emergency grievance with the FDOC secretary and pointed out my fear of further reprisal by Warden Humphries if I submitted my grievance at the institution.

15. Again, Solano did not investigate my reprisal claims and did not accept my grievance as an emergency and told me to submit my grievance at the institution.

16. Because I had no other place that would hear my reprisal complaints I submitted my grievance at MCI, but also filed a motion for an emergency injunction to the Third Judicial Circuit, Lafayette County, to stop Warden Humphries and her staff from further reprisal against me for the exercise of my right to file complaints against MCI staff or its operations.

17. I am willing to testify to these matters in any hearing or court of law if called upon to do so.

Pursuant to 28 U.S.C. §1746, **I DECLARE UNDER PENALTY OF PERJURY**, that the foregoing affidavit is true and correct.

Executed at MCI on this 17th day of September, 2010.

Guillermo Foster, DC# 685752
Mayo Correctional Institution
8784 W. U.S. 27
Mayo, FL  32066

Exhibit "R"

3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

Melvin Pérez,
      Plaintiff,

v.                                      Case No.: 1:11-CV-180-SPM-GRJ

Michael G. Simpson, et al.,
      Defendants.
                                 /

### AFFIDAVIT OF REVEREND RONALD ANTONIO COGMAN, SR.

I, Ronald Antonio Cogman, Sr., do hereby swear that the following statement is true and correct and made of my own free will, from my own personal knowledge:

1. I am the affiant in this cause.

2. I am over twenty-one (21) years of age.

3. I am competent to make this oath.

4. I have personal, first-hand knowledge of the facts stated herein.

5. I am a Biblically-and-ecclesiastical-organization-ordained <u>Divine Spiritualistic Christian minister</u> as well was <u>a full-fledged "associate-scion" member</u> of that religion's Divine Spiritualist Association International Church-of-God Society of Zion (within <u>The Theocratic Hierarchical "Nation of New Palestine"</u>) which is variously short-titled <u>The DSA</u> or <u>DSA</u>, inter Alia.

6. There is an incontrovertible evidentiarily-demonstrable <u>30-plus-years-long-and-continuing conspiracy</u> existent and afoot against my aforementioned nationalistic and humanitarian religion and me that is variously dubbed for the convenient purposes of necessitated judicial litigation and exposé journalism "<u>The expanding [Title 18 U.S.C.A.</u>

Exhibit "S"

§241 / *State v. Burton*[1]] Anti DSA Conspiracy" and which has resulted in such as (but not exclusively)

a)  My collusively-unlawful false arrest and imprisonment, conviction, and incarceration within the Florida Department of Corrections as well as

b)  Exchange-relations collusion furtherance's between the American Criminal Justice System's

- Florida 13th Judicial Circuit Court and
- Florida Department of Corrections (hereinafter FL DOC or DOC).

7.  Significantly aspectual of the aforementioned exchange-relations collusion furtherance's are the evidentiarily-demonstrable premeditated-purpose(s)-aforethought acts and/or omissions to act of the FL DOC's Mayo Correctional Institution's Officer F.H. Winburn (w/f) who has co-conspiratorially aided and abetted – inter alia – a cabal of FL DOC personnel and their inmate agents to malfeasantly threaten, intimidate, harass, tamper with and/or cover up evidence beneficially related to, and/or otherwise relate to my religion and me.

8.  However, also significantly aspectual of the aforementioned exchange-relations collusion furtherance's are the evidentiarily-demonstrable premeditated-purpose(s)-aforethought acts and/or omissions to act of the FL DOC's personnel and their inmate agents which have necessitated – in order to remedy the aforementioned collusively-unlawful false arrest and imprisonment, conviction, and incarceration within the FL DOC – the filing of currently pending proceedings such as, but not exclusively, the following two (2) criminal collateral-spinoff civil "mandamus litigations:

---

[1] 314 So.2d 136 (Fla. June 4, 1975).

Exhibit "S"

a)   <u>Reverend Ronald Antonio Cogmon, Sr v. Michael Crews</u>, <u>Secretary</u>, <u>Florida</u> <u>Department of Corrections</u>, Case No.: 2012CA002637 (2nd Jud. Cir. Ct., Civ. Div.: Cooper) and

b)   <u>Reverend Ronald Antonio Cogmon, Sr v. Michael Crews</u>, <u>Secretary</u>, <u>Florida</u> <u>Department of Corrections</u>, Case No.: 2012CA003224 (2nd Jud. Cir. Ct., Civ. Div.: Cooper) in which former mandamus litigation, pursuant to the express and implicit authority of <u>Turner v. Singletary</u>, 623 So.2d 537 (Fla. App.1Dist. 7-22-93, Rehearing Denied 9-29-93) [because of the <u>collusively obstructionistic</u> parts that <u>my 12-14-12</u> <u>(Fr) collusion-furtherance disciplinary confinement and consequent property</u> <u>dispossession</u> aspectually played in my resultant inability to further effectively represent that litigation], I 2-1-13 (Fr)-mailbox-rule filed <u>consolidated motions</u> moving the court

    i.   To <u>enlarge the time</u> for filing the aforementioned <u>hitherto-obstructed</u> <u>reply</u>;

    ii.   to <u>compel</u> the respondent and his agential functionaries to provide the petitioner the <u>full priority access</u>
…to the FL DOC's inmate law library research system and related materials and services;

    iii.   …to the Petitioner's religious, legal, educational, and writing paraphernalia property in the respondent's and his agential functionaries' possession, as well as ultimately

    iv.   …to the courts to which he is entitled pursuant to such legal authorities as <u>Florida Administrative Code Rules Sections 33-501.301 & 33-602.201</u> and <u>Bounds v. Smith</u>, _____ U.S. _____ (    )

    v.   ..to facilitate the preparation and timely filing of a <u>belated reply</u> as well as

    vi.   ..to facilitate the conduct of <u>the situationally-necessitated</u> <u>evidentiary</u> <u>hearing(s)</u> requested herein-below;

Exhibit "S"

vii.   to permit the petitioner leave to prepare and timely file the belated reply that the respondent's herein-evidenced collusion-furtherance acts and/or omissions to act have obstructed aspectually, however materially, because the petitioner's allegations are incontrovertibly meritorious – as the court's finding that the petitioner's prima facie case sub justice evidences – and therefore entitle him to the protective management processing, classification, and federal-penal system "transfer" that he seeks;

viii.   to conduct adequate documentary, interrogatory, depositional, OBIS-file,[2] nonelectronic OBIS-related-documentation, and any other discovery needed for the conduct of the evidentiary hearing(s) situationally necessitated sub judice, and

ix.   to conduct the evidentiary hearing(s) situationally necessitated sub judice due to the factual conflicts extant between the respondent's and the petitioner's respective adversarial positions in terms of the controlling applicable law and the latter party's establishment for the court thus far that his is a prima facie case for the relief that he seeks.

9.   Consequently, notwithstanding my 2-15-13 (Fr) collusion-furtherance release from the aforementioned 12-14-12 (Fr) disciplinary confinement, not long after that collusively-premeditated-purpose(s)-aforethought release, I was almost immediately on that same date collusion-furtherance "reconfined" under disciplinary-confinement circumstances resultingly.

a)   Further continuing the collusively-premeditated-purpose(s)-aforethought dispossession of my religion-legal property [which contains a substantially-drafted-however-yet-to-be-completed declaration, for my timely provision to FL DOC Inmate Melvin Pérez for evidentiary submission in his pending civil lawsuit litigation, evidencing the aforementioned collusively-premeditated-purpose(s)-aforethought acts and/or omissions to act of the FL DOC's Mayo Correctional Institution's Officer F.H. Winburn who has co-conspiratorially aided and abetted – inter alia – a cabal of FL DOC personnel and their inmate agents to malfeasantly threaten, intimidate, harass, tamper with and/or cover up evidence beneficially related to, and/or otherwise relate to my religion and me (and which collusive malfeasances I am willing to be interrogated and/or deposed and/or testify concerning)] and

b)   Intensifying the merits and justification for the judicial intervention and grant of the aforementioned extraordinary consolidated motions.

10.   I am willing to testify in any court proceeding concerning this matter if called to do so.

---

[2] OBIS is a Florida Administrative Code Title 33 acronym referring to the FL DOC's Offender Based Information System (See, E.G. E.G., F.A.C. Rule Section 33.602.220).

4

Exhibit "S"

Under the penalty of perjury, I declare that I have read the foregoing affidavit and the facts stated in it are true and correct.

Executed this <u>February 16, 2013 A.D.</u> at Jackson Correctional Institution; 5563 10th Street, Malone, Florida 32445-3144.

Reverend Ronald Antonio Cogmon, Sr./DSA
DC No.: F-014909 / Bunk No.: Y2105L
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445-3144

5

Exhibit "S"



Melvin Perez Dc # X11781
Jackson Correctional Institution
5563 10th Street
Malone, FL 32445-3144

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107, January 2008

To: United States District Court
Northern District of Florida
Office of the Clerk
401 S. E. 1st Ave, Suite 243
Gainesville, FL 32601-6805

USPS TRACKING #
9114 9010 7574 2275 8034 65

MAILED FROM
A STATE
CORRECTIONAL
INSTITUTION

Hasler
03/11/2013
US POSTAGE $05.23⁰
ZIP 32445
011D11628150