IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MELVIN PEREZ,

    Plaintiff,

v.                                        CASE NO. 1:11-cv-180-RS-GRJ

MICHAEL G. SIMPSON, et al.,

    Defendants
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 63.) Plaintiff has filed a response and, therefore, the motion is ripe for consideration. (Doc. 73.) For the reasons discussed below, Defendants' Motion for Summary Judgment (Doc. 63) is due to be **GRANTED IN PART** and **DENIED IN PART**..

## I. BACKGROUND

Plaintiff's claims stem from an August 7, 2008 prison disciplinary conviction for refusing to work while he was incarcerated at Mayo C.I. Plaintiff received 60 days of disciplinary confinement as punishment. The only claims still viable at this procedural posture are Plaintiff's claims that Defendants Simpson and Winburn violated the First Amendment by making retaliatory threats against him. The only relief available to Plaintiff is nominal damages. (Docs. 44, 46.)

Plaintiff's factual allegations with regard to the retaliatory threat claims are as follows: Plaintiff alleges that on July 31, 2008 at 8:51 a.m., Sgt. Simpson yelled from the bottom floor of the wing where Plaintiff was housed: "If Lt. Land calls me one more time about a grievance you have filed against me, I'm getting you gassed! There is 64 other

people in here and you want to be the bitch and write everything up." At 11 a.m., Sgt. Simpson came to Plaintiff's cell and asked why Plaintiff filed a grievance against him. Plaintiff avers that he had filed a grievance against St. Simpson a few days prior regarding threats of reprisal disciplinary reports. Plaintiff alleges that Sgt. Simpson then said:

> I am tired of Lt. Land calling down here about your grievances. I hate you. I have fifteen years left to retire and you are going to be back here for fifteen years. I will do everything I can to f–k you. You ain't shit, you have no rights and you are going to get more DR's. I worked back here for four years and never had a problem and in the last four days I have been called about you f–k ass. You will see I will write up the officer giving you the grievance forms.

At about 12:27 p.m., Sgt. Simpson pulled out two prisoners from the cell adjacent to Plaintiff's and at that time told another officer, "that is the f–k boy writing all those grievances" and they both came to Plaintiff's cell door and looked at Plaintiff. At 1:35 p.m., Sgt. Simpson moved Plaintiff's cellmate to an adjacent cell. At 1:40 p.m., Sgt. Simpson came to Plaintiff's cell door and told him he was going to take him outside to do work–to clean floor railings and doors with a toothbrush and Q-tips. Sgt. Simpson walked away, saying "you'll get it tomorrow" and never came back to pull Plaintiff to clean.

The following day, August 1, 2008, Plaintiff said he was served with a DR for refusing to work written by Sgt. Simpson. Plaintiff requested camera evidence, documentary evidence, witnesses, and that the DR hearing be recorded. Plaintiff wrote a statement in his defense and gave it to Officer Winburn, who served him the DR. Plaintiff alleges Officer Winburn then said: "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!"

At the August 7, 2008 hearing on the DR, Plaintiff pleaded not guilty and made a verbal statement in his defense. Plaintiff also presented several witness statements corroborating the alleged threats by Sgt. Simpson. Plaintiff was convicted of the DR and sentenced to 60 days in disciplinary confinement. He sought administrative remedies via the prison grievance process but was denied. Plaintiff challenged the DR in state court, but it was denied on the merits on January 29, 2010. Plaintiff also filed in state court an emergency motion for an ex parte injunction against Sgt. Simpson, but this was denied because the trial court found that an adequate remedy at law existed within the prison grievance procedure. (Doc. 1.)

## II. STANDARD FOR SUMMARY JUDGMENT

Because the Court must rely upon affidavits and other matters outside of the pleadings to resolve this motion the motion is governed by Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### III. <u>DEFENDANTS' RULE 56(e) EVIDENCE (Doc. 63)</u>

**a) Plaintiff's Inmate Population Information Detail**

As of December 28, 2012, Plaintiff was incarcerated at Jackson C.I. (Doc. 63, Exh. A.)

**b) Declaration of Defendant Simpson**

Defendant Simpson denies threatening Plaintiff or writing any false disciplinary reports. He states that on July 31, 2008, he had "only a very limited authority to apply chemical agents to an inmate." Plaintiff's grievances had no adverse impact on Defendant Simpson. (Doc. 63, Exh. B.)

**c) Disciplinary Report Log #212-081283**

Defendant Simpson wrote Plaintiff a disciplinary report for refusing to work on July 31, 2008 at Mayo C.I. Plaintiff was found guilty and given 60 days of disciplinary confinement. (Doc. 63, Exh. C.)

**d) Declaration of Defendant Winburn**

Defendant Winburn was assigned to investigate the July 31, 2008 disciplinary report written by Defendant Simpson against Plaintiff for refusing to work. Plaintiff

requested more than 70 witnesses. Defendant Winburn obtained witness statements from 15 inmates, Defendant Simpson, and Captain Childress. She denies threatening Plaintiff or indicating a desire to spray him with chemical agents. Plaintiff's requests for "irrelevant or unnecessary evidence" is of "no consequence" to her, and she does not have the authority to administer chemical agents absent a spontaneous use of force. (Doc. 63, Exh. D.)

### e) Excerpts of Plaintiff's October 30, 2012 deposition

Plaintiff testified as to the status of his state mandamus action and that Defendant Winburn's alleged threat was meant to deter him from pursuing his defense in his disciplinary hearing. Plaintiff testified that Defendant Winburn made the threat after he had made his requests and given them to her. Plaintiff testified that he was last gassed in 1996 or 1997 and that neither Defendant has ever gassed him. (Doc. 63, Exh. E.)

### f) Order denying mandamus and certiorari relief in state court

The Circuit Court of the Second Judicial Circuit in Leon County, Florida, denied Plaintiff's challenge to his disciplinary conviction for refusing to work. The court found that Plaintiff had been afforded all the due process to which he was entitled, and the DOC's failure to provide all 74 requested witnesses did not entitle him to relief. (Doc. 63, Exh. F.)

### g) Docket sheet for Plaintiff's appeal of the state court case

Plaintiff's appeal of the circuit court's denial of his requests for mandamus and certiorari relief was denied on the merits. (Doc. 63, Exh. G.)

## IV. PLAINTIFF'S RESPONSE (Doc. 73)

### a) Affidavit of Plaintiff

Plaintiff asserts the factual allegations made in his complaint. He declares that genuine issues of material fact exist to support a judgment in his favor. (Doc. 73, Exh. A.)

### b) Defendant Winburn's answers to Plaintiff's Second Request for Admissions and First Interrogatories

Defendant Winburn admits that she and her husband work at Mayo C.I. and that her husband is a captain. FDOC rules do not allow she and her husband to work the same shift. She has never applied chemical agents to an inmate. Her job duties on August 1, 2008, included receiving DRs, preparing them, serving them to inmates, allowing inmates to fill out investigation forms, and than gathering evidence if the inmates request it. She combines the information and gives it to the classification officer. (Doc. 73, Exh. B.)

### c) Grievance of a Sensitive Nature dated August 10, 2008

Plaintiff complains about the events described in his complaint. His appeal was referred to the Office of the Inspector General. (Doc. 73, Exh. C.)

### d) Grievance Appeal dated September 22, 2008

Plaintiff appeals the denial of his grievance at the institutional level, wherein he challenged his disciplinary conviction. His request for administrative appeal was returned without action on October 6, 2008 because the Secretary had previously addressed the issue in separate appeal. (Doc. 73, Exh. C.)

### e) through s) Inmate Affidavits

Plaintiff presents the statements of 15 inmates. The statements of inmates Jarrord Roberts, Jeffrey Sherlock, Robert Anton, Felix Abreu, and Mark A. Kohut (Exhs. E, G, H, I, J) contain statements supporting Plaintiff's allegations of threats made by Defendant Simpson in connection with the July 31, 2008 disciplinary report. The statements of Michael A. McCloud, David Choppa, Donald D'Angelo, and John E. Parker (Exhs. F, K, L, N) relate to various allegations of wrongdoing by Defendant Simpson, but not related to the claims presently before the Court. The statement of Ernestor Enchautegui relates to Plaintiff, but involves allegations against corrections officers not party to this suit and an incident that is alleged to have to occurred in June 2009. (Exh. M.) Finally, Plaintiff has included several inmate statements that involve neither Plaintiff nor Defendants, but generally relate to grievance activity at Mayo C.I. (Exhs. O, P, Q, R, S.)

## V. DISCUSSION

The Eleventh Circuit has established a three-part test to determine whether a Plaintiff has an actionable First Amendment claim. The Plaintiff must establish each of the three elements:

(1) his speech was constitutionally protected;

(2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and

(3) there is a causal relationship between the retaliatory action and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v.*

*Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).

For the first element, it "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Mosley,* 532 F.3d at 1276. "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id*. The second element of the three-part test does not require that the Plaintiff himself was actually deterred from engaging in such speech, but that "a person of ordinary firmness" would be deterred from engaging in the protected speech. *Id.* Finally, the third element asks whether the protected speech subjectively motivated the defendants to engage in the retaliatory conduct. *Id.* A plaintiff bears the burden of proof on all three elements.

Applying this three-part *Bennett* test to Plaintiff's claims, the undersigned finds that Plaintiff has failed to satisfy the three elements as to his claim against Defendant Winburn and as to his claim that Defendant Simpson threatened him with future disciplinary reports. However, the undersigned finds that a reasonable jury could find that Plaintiff fulfilled each of the three elements as to Plaintiff's claim that Defendant Simpson threatened him with the administration of chemical agents in retaliation for filing grievances. The undersigned also concludes that Defendant Winburn is entitled to qualified immunity. Accordingly, for the reasons discussed below, summary judgment is due to be granted in part and denied in part.

**A. Defendant Winburn's alleged threat of administering chemical agents**

Defendant Winburn's job duties included serving disciplinary reports on inmates

and gathering evidence for the disciplinary hearing. (Doc. 63, Exh. D; Doc. 73; Exh. B.) Plaintiff alleges that after he gave Defendant Winburn his requests for evidence and witness statements, including requests for more than 70 witnesses, she said: "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!" (Doc. 1.)

To establish the first element, Plaintiff must show that requesting evidence to defend himself at his disciplinary hearing is protected. Defendants argue that because "much of Plaintiff's requested witnesses and evidence were irrelevant," his request was not protected by the First Amendment and therefore has failed to meet this element of a retaliation claim. (Doc. 63, pp. 10-11.) Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), where a prison disciplinary hearing results in the loss of gain time, the inmate must have received, among other things, an opportunity to call witnesses and present documentary evidence in his defense. These requirements arise from the Due Process protections provided by the Constitution. To the extent this is a constitutionally protected activity contemplated by the first element of the three-part test, it is inapplicable here because Plaintiff did not lose gain time as a result of the disciplinary hearing. Plaintiff's placement in disciplinary confinement for 60 days was not sufficient to trigger constitutional due process protection. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995) (thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection). However, even assuming that requesting evidence for a prison disciplinary hearing that did not result in the loss gain time is protected activity, Plaintiff's claim still fails.

As to the second prong, the issue is whether Defendant Winburn's alleged

statement, "I hope that when they gas you I get to pull the trigger for making me do all this work, because I have to get some relief from this!", would deter a person of ordinary firmness from pursuing witness and evidence for his disciplinary hearing.  It is difficult to imagine how one could be deterred from doing something they had already done.  Per Plaintiff's deposition testimony, he had already made all of his requests and given all of the materials to Defendant Winburn at the time she made the alleged threat.  (Doc. 63, Exh. E.)  Furthermore, the alleged threat was not a direct threat to Plaintiff but rather a statement that when "they" gas him at some speculative point in the future, she wanted to be there.  Accordingly, where Plaintiff had already completed the activity he perceived the threat to be intended to deter; where the threat was expressed as a "hope" for the indeterminate future when "they" would gas Plaintiff, a person of ordinary firmness would not be deterred from exercising his First Amendment rights.

As to the final prong, whether there was a causal connection between the retaliatory action and the adverse effect, a reasonable jury could not find that Defendant Winburn's threat was intended to deter Plaintiff's gathering of evidence in his defense because Plaintiff had already done so.  Nor could her statement reasonably be interpreted as intending to deter Plaintiff from gathering evidence in a future disciplinary hearing.  She made negative statement in light of the 74 witnesses and other evidence Plaintiff requested in connection with the disciplinary hearing.  Plaintiff testified in his deposition that the threat was supposed to keep him from turning in the statements (Doc. 63, Exh. E, p. 5), and that at the time she allegedly made the threat, he had already given her all of his requests.  (*Id.*)  Accordingly, Plaintiff has failed to carry his burden of proof as to the third prong of the *Bennett* test.

Plaintiff has failed to meet all three prongs of the *Bennett* test and therefore summary judgment is due to granted in favor of Defendant Winburn as to this claim.[1]

**B. Defendant Simpson's alleged threat of administering chemical agents**

Plaintiff alleges that on July 31, 2008, Defendant Simpson threatened him with the administration of chemical agents if he filed more grievances: "If Lt. Land calls me one more time about a grievance you have filed against me, I'm getting you gassed!" (Doc. 1.)  As to the first element, it is well-settled that the First Amendment protects inmates from retaliation by prison officials for filing administrative grievances.  *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).

As to the second prong, the question is whether a person of ordinary firmness would be deterred by Defendant Simpson's alleged threat of getting Plaintiff "gassed." The undersigned concludes that a reasonable jury could find that the threat of being sprayed with chemical agents, if made, would deter a person of ordinary firmness from filing grievances.  *See Pittman v. Tucker,* 213 Fed. Appx. 867, 871 (11th Cir. 2007) (finding second prong fulfilled where corrections captain threatened "something drastic" if prisoner filed additional grievances, even where the threat was not made as part of a "prolonged campaign of harassment.")

As to the third element–whether there is a causal connection between the threat and the deterrent effect–a reasonable jury could determine that the threat was intended to deter Plaintiff from filing grievances.  Accordingly, Plaintiff has met his burden under

---

[1]However, even assuming, *arguendo,* that Plaintiff succeeded in fulfilling each of the elements, Defendant Winburn is entitled to qualified immunity on this claim and therefore she would still be entitled to summary judgment in her favor.  An analysis of Defendant Winburn's entitlement to qualified immunity is discussed in detail below.

each of the three prongs of the *Bennett* test, and therefore summary judgment is due to be denied as to this claim.

## C.  Defendant Simpson's alleged threat of false disciplinary reports

Plaintiff contends that Defendant Simpson threatened him with "more DR's" in retaliation for Plaintiff's previous grievances.  The first prong of the *Bennett* test is satisfied because of the discussion related to Plaintiff's filing of grievances, a constitutionally protected activity.  However, this claim fails on the second element–whether "a person of ordinary firmness" would be deterred from filing grievances.  Given the levels of review involved in processing disciplinary reports, the Eleventh Circuit has held that threats of future disciplinary reports would not deter a reasonable inmate from pursuing his grievances.  *Pittman,* 213 Fed. Appx. at 871-72 ("we cannot conclude that a person of ordinary firmness would be deterred from exercising his First Amendment rights because [the plaintiff] has not shown that challenging a disciplinary report during the multi-step investigatory process would be futile"); *Cole v. Secretary Dept. of Corrections,* 451 Fed. Appx. 827, 828 (11th Cir. 2011) (continuing threat of a false disciplinary report "would not deter a reasonable inmate from pursuing his grievance").  Nor has Plaintiff demonstrated that the disciplinary process would be futile.  Accordingly, summary judgment is due to be granted in favor of Defendant Simpson as to the alleged threat of false disciplinary reports.

## D.  Qualified Immunity

Defendant Winburn argues that she is entitled to qualified immunity from suit. The defense of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

*Case No: 1:11-cv-180-RS-GRJ*

constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738)).[2] The doctrine balances the competing but equally important goals of affording officials immunity from suit for reasonable actions taken within the scope of their duties and holding those officials responsible who abuse their power. *Id.*

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) laid out a two step test for determining whether the actions of a government official fall outside the scope of qualified immunity. The Court held that in analyzing a qualified immunity case a court should first ask whether, "on the facts alleged, a constitutional violation could be found." *Id.* at 206, 121 S. Ct. at 2159. Next, the court must determine whether the violation alleged is clearly established in the law, such that a reasonable government official would be aware that he is bound by its prohibitions. *Id.* at 202, 121 S. Ct. at 2156. In *Pearson*, the Court receded slightly from its holding in *Saucier*, holding that a court may decide in its discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236, 129 S. Ct. at 818.

Following *Saucier*, the Court must first determine whether, on the facts alleged, a constitutional violation could be found. 533 U.S. at 206, 121 S. Ct. at 2159. For the reasons discussed above, Plaintiff has not stated a claim for First Amendment

---

[2]The only relief available to Plaintiff is nominal damages. However, nominal damages are still precluded by qualified immunity. *Wilson v. Moore,* 270 F. Supp. 2d 1328, 1355 (2003) (citing *Fox v. Board of Trustees of State Univ. of N.Y.,* 42 F.3d 135, 141-42 (2d Cir. 1994)).

*Case No: 1:11-cv-180-RS-GRJ*

retaliation against Defendant Winburn. However, even if Plaintiff had established a constitutional violation, it was not clearly established at the time.

The Eleventh Circuit has held that "[a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, . . . (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, . . . or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

There is no case law with indistinguishable facts that clearly establishes that Plaintiff's requests for evidence were protected activity, especially where he lost no gain time as a result of the hearing. Furthermore, there is no case law with indistinguishable facts that clearly establishes that a correction officer's hope that she would someday be involved in applying chemical agents to an inmate because he made voluminous requests in preparation for a disciplinary hearing would violate the inmate's First Amendment rights. Nor is there any broad statement or principle that would clearly establish that Defendant Winburn's alleged conduct is unconstitutional.

Finally, the conduct Plaintiff alleges is not "so egregious" that it is clear a constitutional right was violated, even in the absence of case law. The unique facts alleged by Plaintiff raise questions of whether he was even engaged in protected activity and if so, whether the alleged "hope" of Defendant Winburn to be present when unidentified third parties gassed him in the future was unconstitutional under the First Amendment. In the absence of any clearly established law that would put Defendant

Winburn on notice that her actions were unconstitutional, she is entitled to qualified immunity.

## VI. RECOMMENDATION

In light of the foregoing it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 63) should be **GRANTED IN PART AND DENIED IN PART**, and that this cause be referred back to the undersigned for further proceedings.

**IN CHAMBERS** this 25th day of July 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**